# JOPLIN BREWING COMPANY v. PAYNE et al., Appellants.

### Division Two, June, 19, 1906.

1. **LIMITATIONS:** Color of Title: Divorce: Alimony: Sheriff's Deeds. An instrument of writing purporting to convey a certain tract of land, describing the same, is color of title. A sheriff's deed, made by him in pursuance to a sale under judgment in favor of the wife in a suit for divorce against her husband, the landowner, in which she recovered alimony, and to pay which the land was sold, the judgment being void because the service being by publication the court did not acquire jurisdiction over him by personal service or otherwise, is color of title.

2. ——: ——: Adverse Possession: Homestead: Minors. One who has been in the actual, adverse, notorious and exclusive possession of a lot or a part of the lot, under color of title to the whole lot, for ten consecutive years, is the absolute owner of the lot. And that is true even though the lot was the homestead of a husband who had abandoned his wife leaving her and minor children in possession, and the color of title was a sheriff's deed under a void judgment in the wife's favor for divorce and alimony—the adverse possession beginning after the abandonment by her and the minor children of the premises after the sale by the sheriff.

3. ——: Dower. The fact that the wife after the adverse possession began became entitled to dower in the lot owned by her husband, did not interfere with the title acquired by ten years' adverse possession against him.

4. ——: Homestead. The statute relating to limitations and adverse possession makes no exception of land claimed as homestead, but is broad enough to cover all land, however held or claimed.

5. ——: ——: Sale. An abandoned wife's right to homestead in her husband's land is not such a right as may be sold by her during the life of the husband.

6. ——: Abandoned Wife: Homestead: Quarantine: Dower. The lot was acquired in 1875, and occupied by the owner as his homestead and in 1880 he abandoned his wife and went to Texas leaving her and his children, some of whom were minors, in possession. In 1881 she sold the premises, and she and the

children abandoned them, and plaintiff, under the deed from her and under a deed from the sheriff who sold the land under a void judgment in her favor for divorce and alimony, went into possession and has since been in possession. And now the husband's heirs assert that the homestead became vested in her at the time he abandoned. his family; that, having subsequently married, she had the right to occupy the premises until dower was assigned; and that as dower was never assigned and she did not die until 1900, their claim is not barred by limitations. *Held*, first, that the homestead right did not become vested in the wife and children until the husband's death in 1887, long after the Statute of Limitations had begun to run; *second*, she was not entitled to dower until his death, and that right accrued immediately upon his death in 1887, and was barred at the time this suit was begun in 1902; and, *third*, neither she nor the children, because of their homestead or her dower or quarantine right, had any such interest as prevented the Statute of Limitations from running against her husband, and having abandoned the premises in 1881 they are barred by the Statute of Limitations, since plaintiff has since that time been in actual adverse possession.

Appeal from Barton Circuit Court.—*Hon. H. C. Timmonds*, Judge.

AFFIRMED.

*H. S. Miller* for appellants.

(1) Plaintiff failed to show title by adverse possession. Robinson v. Allison, 97 Ala. 596; Padgett v. Norman, 44 Ark. 490; Fisher v. Siekmann, 125 Mo. 165; Null v. Howell, 111 Mo. 273; Holmes v. Kring, 93 Mo. 452; Nixon v. Williams, 95 N. C. 103; Merriwether v. Vaulx, 37 Tenn. 300; Wheelock v. Overshiner, 110 Mo. 100; Bowman v. Lee, 48 Mo. 335; Dalby v. Sniffer, 57 Mo. 294; Laramore v. Minnish, 43 Ga. 228; Duhring v. Duhring, 20 Mo. 176; Thomas v. Black, 113 Mo. 166; Ambrose v. Raley, 58 Ill. 506; Lemonie v. Dunklin Co., 38 Fed. 567; Shipman v. Baxter, 21 Ala. 456; Boril v. Rollins, 30 Cal. 408; Clark v. Lyon, 45 Ill. 388; Champaign v. McMurray, 76 Ill. 353; Moss v. Berry, 53 Tex. 632; Pharis v. Jones, 122 Mo. 125; Gaines v. Saunders,

87 Mo. 557; Norfleet v. Hutchins, 68 Mo. 597; Cook v. Farrah, 105 Mo. 492; Cantlin v. Land & Lumber Co., 151 Mo. 159; Sweringen v. St. Louis, 151 Mo. 348; Carter v. Hornback, 139 Mo. 238. (2) Upon the entire record the finding, judgment and decree should have been for the defendants. Stokes v. McAllister, 2 Mo. 163; Jones v. Manley, 58 Mo. 559; Brown v. Moore, 74 Mo. 633; Kane v. McKown, 55 Mo. 181; Gentry v. Gentry, 122 Mo. 216; Melton v. Fitch, 125 Mo. 281; Sherwood v. Baker, 105 Mo. 472; Fischer v. Siekmann, 125 Mo. 165; Carey v. West, 139 Mo. 177; Osborn v. Weldon, 146 Mo. 192; Westmeyer v. Gallenkamp, 154 Mo. 28; Graham v. Stafford, 171 Mo. 692; Blandy v. Asher, 72 Mo. 27; Sellon v. Reed, 5 Biss. 125; Bonnell v. Smith, 53 Ill. 375; Van Zant v. Van Zant, 23 Ill. 536; Haselton v. Haselton, 166 Mo. 185; Rohrer v. Brockhage, 86 Mo. 544; Lyons v. Lyons, 101 Mo. App. 494; Whitehead v. Tapp, 69 Mo. 415; Gladney v. Berkley, 75 Mo. App. 102; Thompson on Homestead, sec. 690, p. 564; Phillips v. Presson, 172 Mo. 24; Duffy v. Harris, 40 L. R. A. (Ark.) 750; Huffschmidt v. Gross, 112 Mo. 649; Peake v. Cameron, 102 Mo. 568; Vogler v. Montgomery, 54 Mo. 574; Stamm v. Stamm, 11 Mo. App. 598; Kendall v. Powers, 96 Mo. 142; Rockhey v. Rockhey, 97 Mo. 76; Freund v. McCall, 73 Mo. 343; Lake v. Page, 63 N. H. 318; Skouten v. Wood, 57 Mo. 380; Day v. Adams, 42 Vt. 516; Mack v. Heiss, 90 Mo. 578; Roberts v. Nelson, 86 Mo. 25; McPhee v. O'Rourke, 10 Col. 301; Apafford v. Warren, 47 Iowa 47; Hart v. Evans, 80 Ga. 330; Gunney v. Doane, 22 Cal. 635; Alexander v. Alexander, 52 Ill. 195; Monroe v. May, 9 Kan. 466.

*C. H. Montgomery* and *A. E. Spencer* for respondent.

Respondent has title by adverse possession under the Statute of Limitations. Respondent and the par-

ties under whom it claims were in the actual possession of the whole of the lot for more than twenty-one years before appellants filed their answer claiming title; but if they had been in possession of only a part, their color of title would have extended their possession to the whole lot. Sec. 4266, R. S. 1899; Stevens v. Martin, 168 Mo. 407. Ten years unbroken possession by the grantee of a part of a tract, after the recording of the deed under which he holds, gives him title to the whole. Plaster v. Grabeel, 160 Mo. 669; Scannell v. Co., 161 Mo. 606. Color of title is not necessary to originate ownership by limitation; a claim of title with adverse possession of the requisite character for the requisite period will carry title without any paper support. Quick v. Rufe, 164 Mo. 408; Scannell v. Co., 161 Mo. 606. The Statute of Limitations commenced to run against Martin V. Payne in his lifetime and did not stop at his death. Jones v. Thomas, 124 Mo. 586; Burdett v. May, 100 Mo. 19; Campbell v. Co., 84 Mo. 353. Occupancy is necessary to the homestead right. Visible occupancy of the premises as the head of the family at the time of the levy of the writ fixes the homestead rights of the defendant. St. Louis Brewing Assn. v. Howard, 150 Mo. 451; Beckman v. Myer, 75 Mo. 333; Finnegan v. Prindville, 83 Mo. 517. The visible occupancy of the premises as the head of a family under a recorded title, fixes the character of the property as a homestead. Jackson v. Bowles, 67 Mo. 610; Graham v. Lee, 69 Mo. 334; Beckman v. Myer, 7 Mo. App. 576. Even if Mrs. Payne had a right of homestead, such right during the life of her husband, Payne, owner of the fee, was not a thing that could be sold, hence, nothing could pass from her to Keller by her quit-claim deed. Thomp. on Homesteads and Exemp., sec. 452; Blandy v. Asher, 72 Mo. 27; Gladney v. Berkley, 75 Mo. App. 101; Quick v. Rufe, 164 Mo. 414. During the life of both parents, the children have no interest in the homestead. Thomp. on Homestead and

Exemp., sec. 43. A homestead is lost by abandonment, and a party cannot have two homesteads. Kaes v. Gross, 92 Mo. 647; Rouse v. Caton, 168 Mo. 288.

BURGESS, P. J.—This is a suit to ascertain, determine and quiet the title to lot numbered seventy-three, in Porter's addition to Murphysburg, now in the city of Joplin, Jasper county, Missouri. The suit was commenced in the circuit court of Jasper county, but was by a change of venue transferred to the Barton Circuit Court, being tried at the January term, 1903, of said court.

The plaintiff claims title to the real estate in question by adverse possession under color of title, the color of title being claimed through a deed executed by the sheriff of Jasper county to G. W. Keller, on the 16th day of June, 1881, and also a quitclaim deed executed by Rosanna Hicks, formerly Rosanna Payne, wife of M. V. Payne, on June 16, 1881, to said Keller.

The defendants are the lawful heirs of Martin V. Payne, deceased; both parties to the suit admit that the common source of title was in Martin V. Payne.

The judgment on which execution was issued against Martin V. Payne and under which the lot in question was sold by the sheriff was a personal money judgment for alimony in favor of said Rosanna Payne, wife of Martin V. Payne, by reason of a divorce proceeding instituted by said Rosanna Payne against her said husband. The property was sold by the sheriff and purchased by G. W. Keller for one hundred and fifty dollars. Said Keller and wife, by quit-claim deed, dated February 4, 1884, transferred and sold said property to George Muennig and Nicholas Zentner. On August 7, 1888, Muennig and wife transferred their half interest in said property to said Zentner. Nicholas Zentner and wife, on March 8th, 1894, sold and transferred, by warranty deed, said property to the plaintiff, The Joplin Brewing Company.

The material facts developed by the testimony are as follows:

Martin V. Payne bought the lot in question in 1875, and lived thereon with his wife and family of five children until 1879, when he abandoned his family and went to Texas. On April 12, 1880, Rosanna Payne filed a petition for divorce from her husband, said Martin V. Payne, on the ground of adultery; publication service was had, and the divorce was granted December 16, 1880. She was awarded the care and custody of her two infant children, and the court gave her a personal judgment for alimony for $250 on publication service. After Payne had gone to Texas, Mrs. Payne rented the place to Marion Hicks, her son-in-law, and for a time she lived with her said son-in-law. Afterwards she married another man named Hicks and went with him to North Missouri and made her home there on a farm. Her family were nearly all grown at this time; the youngest, Martin V. Payne, twelve years old at the time of the sale to Keller (died November 19, 1887), had lived with his sister and brother-in-law, Marion Hicks, until he moved off from the lot in controversy before the sale to Keller, and went to live with his sister, Mrs. Mefford, in Galena, Kansas.

James Walter Hicks, sixteen years old in 1881, worked in Lone Elm, and went to the house of his brother-in-law on Saturday nights.

Nancy Elizabeth Payne married Marian Hicks, who lived on the place in controversy until a few weeks before the sale to Keller.

Charles Lewis Payne, born in 1861, went to North Missouri in 1880, and made his home there.

Anna Mefford married some years before, and made her home in Galena, Kansas.

On June 16, 1881, when the lot was sold by the sheriff to Keller, Mrs. Payne executed to Keller a quit-claim deed to said property, but her then husband, Hicks, did not join with her in said deed. The money

for the lot was paid her, and she then went to North Missouri where she made her permanent home. According to the evidence, Rosanna Payne Hicks died on May 25, 1900, and Martin V. Payne, her former husband, on November 19, 1887.

All the Paynes left the lot, remained away therefrom, and never made any claim thereto for more than twenty-one years, or until the defect of plaintiff's record title was pointed out by plaintiff's suit to quiet title.

The evidence tended to prove that the plaintiff and its grantors had been in adverse possession of the property in controversy for twenty-one years, and the defendants offered no evidence to rebut the evidence of plaintiff's witnesses in this regard.

The court, under the evidence submitted, found that for more than twenty-one years before the Payne heirs claimed the lot, the plaintiff and its grantors had been in the open, notorious, peaceable, adverse and continuous possession thereof, under color of title and claim of ownership, and that plaintiff is the absolute owner of the lot in controversy, and that the Paynes had no right or title in or to said lot. That the homestead right, if not abandoned, was in the husband, Martin V. Payne; that the divorce of Mrs. Payne did not change his status with regard to the property; that the Statute of Limitations commenced to run against Martin V. Payne during his lifetime, and having commenced to run, did not stop at his death.

Defendants duly filed motion for new trial, which was overruled, and they appeal.

While the judgment on which execution was issued against Martin V. Payne, and under which the lot in question was sold by the sheriff, was a personal money judgment for alimony in favor of his wife, Rosanna Payne, in a suit for divorce by her against her said husband, and was void for the reason that the court had not acquired jurisdiction over said Martin V.

Payne by service of process or otherwise, it does not follow that the sale of said lot to Keller and deed made to him by the sheriff on June 16, 1881, under execution issued upon said judgment, was not color of title. We think it was. Any instrument of writing which purports to convey a certain tract of land, describing the same, is color of title. [Hamilton v. Boggess, 63 Mo. 233; Hickman v. Link, 97 Mo. 482; Allen v. Mansfield, 108 Mo. 343; Suddarth v. Robertson, 118 Mo. 286; Wilson v. Taylor, 119 Mo. 626; Quick v. Rufe, 164 Mo. 408.]

Keller, on the 16th day of June, 1881, obtained from Rosanna Hicks (late Payne) a quit-claim deed to the same lot, and on the same day entered into the actual possession thereof, claiming title thereto, and so remained in possession until the 4th day of February, 1884, when he and his wife conveyed said lot, by deed, to George Muennig and Nicholas Zentner, from whom plaintiff, by mesne conveyances, acquired color of title to said property.

If, as the evidence tends to show, plaintiff and those under whom it claims title, were in the actual, adverse, notorious and exclusive possession of the lot in question for ten consecutive years or more, under color of title to the whole lot, or to part of the lot, claiming title to the whole, it is the absolute owner of said lot. [Sec. 4266, R. S. 1899; Stevens v. Martin, 168 Mo. 407; Cunningham v. Snow, 82 Mo. 587; Allen v. Mansfield, 82 Mo. 688; Plaster v. Grabeel, 160 Mo. 669; Scannell v. American Soda Fountain Co., 161 Mo. 606.] The Statute of Limitations began to run against Martin V. Payne when Keller took possession in 1881, and having been put in motion did not stop when Payne died, on November 19, 1887, nor would the fact that Mrs. Payne became entitled to dower, after adverse possession of the lot was taken by Keller, affect the operation of the statute. [Jones v. Thomas, 124 Mo. 586.]

Section 4262, Revised Statutes 1899, provides: "No action for the recovery of any lands, tenements or hereditaments, or for the recovery of the possession thereof, shall be commenced, had or maintained by any person, whether citizen, denizen, alien, resident or non-resident of this State, unless it appear that the plaintiff, his ancestor, predecessor, grantor or other person under whom he claims was seized or possessed of the premises in question, within ten years before the commencement of such action."

It will be observed that this statute makes no exception of land claimed as homestead, but is broad enough to cover all kind of land, however held or occupied. It must, therefore, apply to the lot in question. The homestead law at the time Payne abandoned his family and homestead only exempted the homestead from attachment and execution for debts contracted after the acquisition of the homestead, and did not prohibit the mortgaging or sale of it by him; and it would seem that if these things could be done under the homestead law the Statute of Limitations would apply to land claimed as a homestead as well as to lands not so occupied. To hold otherwise would be to legislate into the Statute of Limitations a provision exempting homesteads from the operation thereof, which this court has no power or authority to do. It makes no difference whether Payne left his family and homestead, with the intention of abandoning them or not. When Keller acquired possession of the homestead, with the intention of holding and claiming it as his own, his possession was adverse from that time on.

But defendants insist that, according to the evidence, Martin V. Payne and family occupied the homestead in question as their home, which was all the property they owned, from the time of its purchase, in 1875, until Mrs. Payne conveyed the lot by quit-claim deed to Keller on June 16, 1881; that the homestead became vested in her at the time her husband abandoned his

family; that she had the right to occupy the premises until dower was assigned, or during her life, and that as dower was never assigned, and she did not die until May 25, 1900, there could be no adverse possession of the property until that time. But the homestead right did not become vested in the wife and children of Payne until his death, November 17, 1887 (sec. 2693, chap. 39, R. S. 1879) long after the Statute of Limitations had begun to run against him. Nor until the death of Payne was the wife entitled to dower, and if such right she had she never asserted it during her life so far as the record discloses, and no one can do so now that she is dead. Besides, her right of action for assignment of her dower accrued immediately upon the death of her husband, Payne, and was barred by ten years' adverse possession next thereafter. [Robinson v. Ware, 94 Mo. 678; Long v. Kansas City Stock Yards Co., 107 Mo. 298.]

In Quicke v. Rufe, 164 Mo. 1. c. 414, MARSHALL, J., speaking for the court, said: "The only obstacle in the way of the running of the Statute of Limitations, therefore, that has been suggested, is that the widow's dower had never been assigned to her, and therefore she was entitled to quarantine until her dower was assigned. But even this will not avail the plaintiffs, for, as pointed out, such quarantine is only a personal right of the widow to remain in the mansion house of the deceased husband until her dower was assigned her, and the widow abandoned that right in 1866, when she sold the property, and in any event she has not attempted to exercise it since 1881."

But even if Mrs. Payne had a right of homestead, such right, during the lifetime of her husband, who was the owner of the lot in fee, was not such an interest in the homestead as could be sold; hence nothing passed from her to Keller by her quit-claim deed. In Thompson on Homesteads and Exemptions, section 452, it is said:

"Whatever views are entertained as to the interest in land created by a Statute of Homestead—whether it rises to the dignity of an estate, or sinks to the level of a mere negative immunity from dispossession— all courts agree that it is not such an interest in lands as is alienable separately from the fee. In this respect it sustains a strict analogy to the right of dower. Either may be released to the alienee of the fee so as to merge therein, but neither can be aliened separately. The same rule obtains as to exempt chattels. The chattel itself may be sold, and it will be exempt or not, in the hands of the vendee, accordingly as he answers the description of the Statute of Exemptions; the thing may be sold, but the exemption is a personal privilege, incapable of alienation."

Mrs. Payne abandoned the property as a homestead, and turned the possession thereof over to Keller, and there can be no question that, thereafter, his possession was adverse.

The trial court found that plaintiff and those under whom it claimed title to the lot in question had been in the open, notorious, peaceable, adverse and continuous possession thereof, under color of title and claim of ownership, for twenty-one years, and that plaintiff is the absolute owner thereof, and that neither of the defendants had any right, title or interest in or to said real estate. The finding was well supported by the evidence, and the conclusion reached was in accordance with the law of the case. Our opinion is that the judgment should be affirmed. It is so ordered.

All concur.