**Eva B. SHORE, Appellant,**

v.

**Mrs. Elianora BAUMBACH and Irwin Goeggel, Respondents.**

**No. 45630.**

Supreme Court of Missouri, Division No. 2.

Feb. 10, 1958.

Motion for Rehearing or to Transfer to Court En Banc Denied March 10, 1958.

James E. Dearing, Dennis K. Woodside, Clayton, for plaintiff-appellant.

Ziercher, Tzinberg, Human & Michenfelder, Erwin Tzinberg, Clayton, for defendants-respondents.

LEEDY, Judge.

In this boundary controversy between two adjoining landowners, the trial court found against plaintiff, Eva B. Shore, in her action for possession and for a mandatory injunction requiring the removal of defendant's encroaching bay window, and upon defendant's cross-bill decreed the latter, Ellanora Baumbach, to be the owner in fee simple, by adverse possession, of a disputed strip along the west side of her premises, and plaintiff appealed.

Irwin Goeggel occupied the premises of his mother, Mrs. Baumbach, as her tenant, and he was made a party defendant for that reason. He does not claim any interest in the property, and his role in the case, although nominally a party, is simply that of a witness. For convenience, then, we shall continue to refer to his mother as "the defendant."

The properties involved are adjacent parts of Lot 5, Block 1, in East Clinton Place, Kirkwood. The plaintiff, Eva Shore, is conceded to have the record title to the west 39'6" of said lot, which fronts south on East Clinton Avenue and extends north a distance of 148.92 feet to the north boundary. The defendant, Mrs. Baumbach, has record title to the 35.07 feet of said lot lying immediately to the east of Mrs. Shore's property. It likewise extends north 148.92 feet. Mrs. Shore also owns a part of Lot 4 which lies immediately west of Lot 5, her total frontage along East Clinton Avenue being 70 feet. Her property is improved with a frame dwelling, garage, driveway, etc. The common source of title was agreed to be Fred Laudermilch, who in 1906 became the owner of both the present Shore and Baumbach premises.

Defendant, Mrs. Baumbach, through mesne conveyances is the last grantee and successor in title to Laudermilch to the portion of Lot 5 to which, as stated, she has record title, the same having been acquired by her August 10, 1936, by warranty deed from Henry F. Meier. Her name at that

time was Goeggel, and she has since married again.

Plaintiff acquired title (in her then married name of Johnson) to her premises by warranty deed dated March 24, 1948, from Mary L. Laudermilch, a widow.

It was agreed that a bay window attached to, and on the west side of defendant's house extends westwardly along and across the line dividing the record titles to the two properties; that 2.3 feet of said bay window extends west of said dividing line; that said bay window, from north to south, is 7.70 feet in length; that the Baumbach residence, excluding the front porch, is 32 feet, more or less, north of the south boundary line of the lot. From photographs it appears that the Shore residence is set back a similar distance from the south boundary of its lot. It is 56 inches from the west end of the bay window to the east edge of plaintiff's driveway, which driveway runs north from East Clinton Avenue between the two residences and parallels the dividing line between the two properties, as shown by the respective deeds thereto. It is this strip, 65 feet in length, between the Baumbach residence and the east edge of the driveway that forms the subject matter of this controversy. The driveway consists of two concrete strips leading to the garage, which presently faces south. It had formerly been a shed located behind plaintiff's residence, and faced east, but after purchasing the premises she caused it to be moved to its present location and converted into a garage. The front of the garage is a few feet north of the north end of Mrs. Baumbach's residence.

Plaintiff's sole complaint (expressed under several heads) is a challenge of the sufficiency of defendant's evidence to sustain her claim of title to the disputed strip by adverse possession, as decreed by the trial court. The case is somewhat unique among cases involving adverse possession in that on the merits of the case, and on that issue in particular, the only witnesses were the parties themselves—Mrs. Shore, on the one hand, and Mrs. Baumbach and her son, on the other.

Irwin Goeggel moved to the Baumbach property in June, 1937, and lived in the house continuously thereafter until December, 1954. The strip was not fenced at the time he moved there, nor indeed until after the date of the filing of this action, when Mrs. Shore caused one to be constructed. There was, however, a fence extending north from the north end of the driveway to the north boundary. Goeggel testified that this fence was on a line with the east edge of the driveway, and that sometime after Mrs. Shore acquired her property she caused the fence to be reconstructed and moved 5 feet to the west of its former line. At the same time she caused a fence to be built from the bay window southwardly toward the street on what she contends is the dividing line. Inasmuch as all this was done after the institution of this action and after the time, as held by the trial court, that the statute of limitations had run in defendant's favor, the matter of the fence as reconstructed and extended is of no moment.

Goeggel testified that during all of the time he lived there, he maintained and took care of the strip between the west side of his mother's house and the east edge of the driveway by cutting the grass and weeds thereon; that he received his coal there and used the strip in painting that side of the house, and "a lot of times washed my car there; I don't recall anything else I could have done." He testified that he used the strip as his own, and that the Laudermilchs, although living in the present Shore property, did not use it. He further testified specifically that the Laudermilchs did not at any time cut the grass on the strip, nor did Mrs. Shore after she acquired it, and the Laudermilchs never discussed with him the fact as to whether or not the line was where he maintained it was; that prior to the filing of this action no one else had claimed

ownership of this strip, or that he was maintaining property other than his mother's. On cross-examination the witness was asked: "Q. Did you know where your property line actually was?" to which he replied, "From what my mother told me, that the property line extended east of the driveway. The old fence back there was in line with the driveway and that is what I always called it, and that is what I maintained. I maintained all along there. Q. You maintained from the driveway, thinking it was your property? A. That's right, sir." The bay window was in existence at the time he moved there, and had been since the house was built. Witness estimated the age of the house to be 35 or 40 years. He testified the Laudermilchs had no car, but they used their driveway for the purpose of receiving delivery of coal, but they did not go upon that part of the property east of the driveway; that when their son-in-law washed his car he used the driveway itself. Further, that in receiving his (Goeggel's) coal, delivery of which was made on the strip in question, the trucks sometimes damaged the bay window by knocking shingles loose.

Mrs. Baumbach testified that she saw the property prior to the time she purchased it, and that at that time the then owner, Meier, pointed out to her the west boundary of the property as being the fence extending north and south at the rear of the house, the line of which, projected southward toward the street, would be about 56 inches west of the west line of the bay window, and that she at all times claimed and held her property according to the line as thus pointed out to her by the former owner. She testified that while she did not live in the premises, she had personally cut the grass on the disputed strip a couple of times when her son was away on vacation, and that she knew of her own knowledge of her son having maintained the strip by cutting the grass thereon while he lived there. She further testified that no difficulty arose between her and the Laudermilchs with respect to the boundary line between the two properties, and that from the time she purchased her property in 1936 until March 27, 1950, the date of the filing of this action, no one made claim to any of the property "east of the fence and from there on" including her house.

Mrs. Shore, testifying in her own behalf in rebuttal, stated that the fence she reconstructed was not moved eastward, but, on the contrary, that the old post holes were used in replacing the old fence; that after she acquired the property in 1948 she had used the disputed strip by "cutting the grass and tried to maintain the yard;" that she planted grass on the strip. She had been absent in Alaska for a period of two years between the time she bought the place and the time of trial. Inasmuch as her use and possession of other portions of her property are not in issue, it is unnecessary to detail her testimony in that regard.

■ The parties are not in disagreement as to the five essential elements necessary to constitute an effective adverse possession, namely: 1, The possession must be hostile, and under a claim of right; 2, it must be actual; 3, it must be open and notorious; 4, it must be exclusive; and 5, it must be continuous. Hilgert v. Werner, 346 Mo. 1171, 1176, 145 S.W.2d 359, 361; Swope v. Ward, 185 Mo. 316, 324, 84 S.W. 895, 896.

The first point made by plaintiff is that the third of these elements is lacking here because defendant's acts of possession "were admittedly for appearance sake." This contention is based primarily upon a single answer to a question propounded to Goeggel, as follows: "Q. What did you do to maintain it [the strip]? A. All I did was cut the grass and cut weeds, *to show off the house* and paint the house on that side." The words we have italicized are seized upon as indicating that what Goeggel did was only in furtherance of his desire "to keep up a neat appearance." This ignores his other testimony, as well

as the question and answer which immediately followed the foregoing, viz.: "Q. Anything else? A. I said I received coal there, and washed my car there several times. I don't recall anything else I could have done." It will not do to lift a single clause out of a statement and give effect to it to the exclusion of the remainder of the statement and other testimony of the same witness on the same subject. As thus viewed, we think there is nothing in plaintiff's first contention.

It is next urged that "defendant's own uncontradicted testimony showed there was joint and coextensive possession and use." This contention is based on the following: Mrs. Baumbach's admission that she never lived in the house and did not know whether the Laudermilchs had cut grass on the strip, and Goeggel's testimony that (to quote plaintiff's brief) "plaintiff's predecessors used that area to wash cars and to receive coal—with the exception of grass cutting and house painting, the very same acts which defendant claims is sufficient to vest title in her by adverse possession." This misconstrues Goeggel's testimony. It is true he said that Laudermilch's son-in-law used the *driveway* on which to wash his car, but he also testified that this activity was confined to the driveway and was not carried on over or upon the disputed strip. The same applies to the delivery of coal to the Laudermilchs, which was via the driveway itself, not the adjacent disputed strip.

We have been cited to no evidence pointing to defendant's possession as being permissive, and hence it is unnecessary to discuss the point made in that connection.

Plaintiff next complains generally that defendant failed to sustain her burden of proof on the issue of adverse possession. If a possessor occupies land intending to occupy it as his own, his occupancy is adverse, and it is not necessary that he intend to take away from the true owner something which he knows belongs to another.

State ex rel. Edie v. Shain, 348 Mo. 119, 123, 152 S.W.2d 174, 176. "* * * [T]he determining factor is not what the encroaching owner knew about the true boundary line, but what he intended to unequivocally claim was his boundary line." Bell v. Barrett, Mo., 76 S.W.2d 394, 397. As regards the portion occupied by the overhang of the bay window, what was said in State ex rel. Edie v. Shain, supra, 348 Mo. loc. cit. 125 and 152 S.W.2d loc. cit. 177, with respect to inferring intent to hold and possess from the fact that improvements of a permanent nature were placed upon land is applicable here: "In a case in which a simple residence property is involved and there is no question of lease, it is hard to imagine the mental condition of an owner who claims to own the building but not the land it rests upon." It would be unreasonable under the circumstances of this case to say that Mrs. Baumbach claimed any less than title to the whole of the land upon which her building was situate and the space the bay window occupied above the land. Five Twelve Locust v. Mednikow, Mo., 270 S.W.2d 770. Nor is there any evidence to justify the view that she made any less claim to the adjacent strip between the west side of her house and the east edge of plaintiff's driveway. The evidence touching her claim to one portion applies with equal force to both. We are of the opinion, and so hold, that there was sufficient evidence upon which to base the finding of the trial court that Mrs. Baumbach had been in the actual, open, exclusive, hostile, notorious, and uninterrupted possession of the strip in question for more than ten years under a claim of right prior to the time plaintiff acquired the adjoining property. The court reduced the width of the strip awarded to defendant to 5 feet, which was somewhat below the area her proof showed. However, she has not appealed and we are not concerned with the merits of this lesser award. The decree should be, and it is, affirmed.

All concur.