Bertha E. **WALKER** and Viola **Koch**, Respondents,

v.

Oscar **WALKER** and Flora **Walker**, Appellants.

No. 56689.

Supreme Court of Missouri, Division No. 1.

May 13, 1974.

Fred Roth, Clayton, for respondents.

Robert A. Hampe, J. Martin Hadican, St. Louis, for appellants.

Madigan, Hadican & Maloney by J. Martin Hadican, St. Louis, for defendants-appellants.

HIGGINS, Commissioner.

Action, inter alia, to establish and quiet title to real estate by adverse possession. (Appeal taken prior to January 1, 1972.)

Plaintiffs' petition was in three counts. Count I was for temporary and permanent injunctions to enjoin defendants from obstructing plaintiffs' free use and enjoyment of a 3-foot strip of land which they used as a driveway; Count II was for actual and punitive damages; and Count III was to quiet title in plaintiffs to the strip in dispute by adverse possession.

Defendants counterclaimed for damages for trespass on the disputed strip, and answered in denial of plaintiffs' petition.

Prior to trial, plaintiff Bertha Walker died and plaintiff Viola Koch conveyed plaintiffs' tract to William H. Seebold, Jr. and Lynne G. Seebold.

At conclusion of trial to the court, the court entered judgment and decree for plaintiffs as follows:

"Count I—Injunction made permanent.

"Count II—One dollar actual damages, no punitive damages.

"Count III—Plts. are the owners of the three foot parcel of land lying between Tracts A and B contained in the area of Plts' driveway; and that Plts. are owners thereof in Fee Simple;

"Defts. and each of them have have no right to, title or interest in and to said three foot parcel of Real Estate; and that Defts. and each of them are forever enjoined and restrained from asserting or claiming any right, title or interest in and to said Real Estate."

Under Rule 73.01(d), V.A.M.R., this judgment shall not be set aside unless it is clearly erroneous. Appellants make but one attack upon the judgment. In their original brief they assert the court erred in its judgment "in that elements of preemptive prescriptive right were not proven by plaintiffs." In a supplemental brief they assert the judgment is erroneous and "cannot be sustained upon plaintiff's pleaded ground of acquiring title by adverse possession for the reason that the elements of adverse possession were in issue and that plaintiffs failed to prove by any evidence the presence of all of the elements of adverse possession."

According to George Tripp of St. Paul Title Insurance Corporation, plaintiffs' predecessors in title commenced with Morritz and Maria Walker, who, in 1918, purchased Lots 2 and 12 of W. F. Musick's Subdivision, U.S. Survey 1994, Sections 21 and 28, Township 44 North, Range 6 East. They conveyed a portion of this realty described as "All of Lot 2 in U.S. Survey 1994, Sections 21 and 28, Township 44 North, Range 6 East and being part of Lot 12 of W. F. Musick's Subdivision and lying along the Tesson County Road, containing 75.81 feet [frontage]" to defendant Oscar Walker in June 1936. This was designated Tract B in plaintiffs' petition and in the judgment. In 1938 Morritz and Stephanie Walker conveyed another portion of Lots 2 and 12 of W. F. Musick's Subdivision described as "beginning at a point 55.86 feet Northeast of the intersection of the Northeast line of Sappington Road as

widened and the Northwest line of Tesson Ferry Road, thence running north 18°18′ West 141.40 feet to a point, thence running north 67°42′ East 40.091 feet to a point in the Southwest line of a one acre tract conveyed to Margaret Heimberger, by deed in Book 562, page 114, thence running along the Southwest line of said one acre tract South 18°18′ East 144.18 feet to a point in the Northwest line at Tesson Ferry Road, thence running Southwest along the Northwest line of said Tesson Ferry Road 40 feet to the place of beginning," to plaintiff Bertha Walker. This was designated Tract A in plaintiffs' petition and in the judgment. Bertha Walker, a widow, conveyed Tract A to her daughter, Viola Koch, subject to a life estate in Bertha Walker. Bertha Walker died while this suit was pending, and Viola Koch, a single person, conveyed Tract A to William H. and Lynne Seebold.

The parcel conveyed to Oscar Walker, Tract B, and the parcel conveyed to Bertha Walker, Tract A, adjoined. There was a 3-foot discrepancy between the lot number and metes and bounds descriptions in the deeds when compared to a survey made by Elbring Survey Company in 1926, but the parcels have been correctly identified and described except for an error in the description of Tract A conveyed to Bertha Walker, which should have been described as Lot 1. The parcel deeded to Oscar Walker, Tract B, contained a frontage of 75.81 feet, but the Elbring survey showed it to be 78.81 feet. It also showed frontage of the property conveyed to Viola Koch, Tract A, to be 40 feet.

John Bergh, a land surveyor for Thatcher and Patient, Inc., made a survey of plaintiffs' property, Tract A, in August, 1969. It showed front and rear lines of 40 feet and 40.09 feet, and side lines of 144.81 feet and 141.40 feet. He identified a 3-foot high chain link fence erected by defendants in July, 1969, as located approximately one foot inside plaintiffs' property at the boundary between plaintiffs' property and defendants' property to the west.

He found an old fence along the boundary three feet west of the western boundary line of plaintiffs' property.

Karl Wagner, a land surveyor for Elbring Survey Company (for defendants), identified surveys made of the parcels in question in 1926, on April 10, 1962, and on September 5, 1969. It was reflected that the original 78.81 feet of frontage of defendants' property had been reduced by 20 feet by the widening of Lindbergh (Sappington) Road; that defendants were left with a frontage of 55.86 feet; that plaintiffs had a frontage of 40.09 feet; and that plaintiffs' driveway was on defendants' land.

Plaintiff Viola Koch recalled that her parents, Frank and Bertha Walker, purchased their property, Tract A, in 1938 from her grandparents, Morritz and Stephanie Walker. Her uncle, defendant Oscar Walker, owned the property adjacent on the west. Her property was improved by a house but her parents never lived in it. She moved into the house February 3, 1947, and lived there continuously for eleven years. There was a driveway on the west side of the property leading to a garage in the rear. An old fence built by Morritz Walker separated the two parcels, and her father, Frank Walker, replaced the old fence in April or May, 1947. Her Uncle Oscar told him to "put the fence back in the same damn place Cap [Morritz] had it." The replacement fence is still standing. The old fence was not exactly straight and may have extended as much as half a foot either way from the boundary line. If it was right on the boundary line, it would be in plaintiffs' driveway. When she vacated the premises, she was followed by a Greenwald family, and then by Mr. and Mrs. Eli Janis and family. All used the driveway, as had she and her husband, without objection by defendants except for some bickering.

In July, 1969, plaintiff Viola Koch discovered a chain link fence built in her driveway. Photographs show the driveway

as two tracks covered with chat, placed there by her father, with grass in the center and on each side of them. The chain link fence was in the middle of the westernmost track. It was the same fence described by Mr. Bergh. It remained in her driveway for two months during which she lost $180 rent and paid $269 for surveying and $250 to retain counsel. She erected a "No Trespassing—Keep Out" sign in September, 1969, after she found the fence in her driveway. Defendants, through their lawyer, informed her two or three months before that they were going to erect the fence; she did not consent to its erection. According to Viola, defendants did not use the driveway in question from 1938 to 1970; they had their own driveway west of plaintiffs' property. The driveway was used only by her and her tenants. Defendant Oscar Walker had never told her to get off the driveway, nor did he ever tell her father to do so in her presence. Oscar and Frank did bicker over the driveway, but Oscar never did anything about any claim he ever made until July, 1969.

Eli Janis rented plaintiffs' property, Tract A, from September, 1957, to December, 1968. He identified the driveway in question to have been the same as it is at present, and that the old wire fence west of the driveway was in the same location as it had been when he was renting. No one other than him and his family used the driveway during his occupancy of plaintiffs' property. Defendants used their own driveway located on their property west of the old fence. He never heard any objections from defendants about his use of the driveway in question.

Defendants' version came from defendant Flora Walker and her daughter Jacqueline Burgess.

According to Mrs. Walker, plaintiff Viola Koch took down the old fence and placed it one foot further onto defendants'

property; however, she made no complaint about it until she had the chain link fence erected in 1969. She told Viola's father, Frank Walker, to move the old fence, but allowed it to remain on her property for thirty-two years. She justified this on the ground that the parties were related. Her counterclaim was based upon the occupation of her land by plaintiffs for that period. She took credit for caring for the area on both sides of the fence by removing poison ivy and weeds and by planting flowers and bushes on plaintiffs' side of the fence. She said that in 1942, before Mrs. Koch moved to plaintiffs' property, a Greenwald family lived there and defendants parked their car in plaintiffs' driveway; they had parked there between 1942 and 1947 on a weekly basis by occasional use of the driveway. Frank Walker never cared for the property around the old fence, nor did Bertha Walker care for the area. Mrs. Walker admitted they erected the chain link fence in the driveway in 1969 after sending a notice to plaintiffs that she intended to do so. She had the fence taken down in September, 1969, because part of it was on plaintiffs' side of the line as defendants located it. When she attempted to have the fence reinstalled, plaintiffs blocked the driveway.[1] Defendants paid $184 for the Elbring survey and $150 counsel retainer. She wanted to get all her ground back into her possession. She had no idea how the deed from Morritz Walker to her father, Oscar Walker, called for a seventy-five foot frontage as compared to the seventy-eight foot frontage determined by the Elbring Survey. She was aware that plaintiffs owned a forty-foot frontage.

Jacqueline Burgess lived with defendants on Tract B from 1937 until she married at age 21 in 1951. She and her family cared for the property on both sides of the old fence; Bertha Walker never cared for the property along the fence. She used part

1. A stipulation filed October 30, 1969, provided that defendants would not interfere with plaintiffs' use of the driveway and none of the parties would take any ac-tion with respect to erecting any new fence or taking down any old fence until after the suit was determined.

of the disputed strip a few times to park her car east of the old fence.

The elements of prescription and adverse possession are virtually the same, George v. Crosno, 254 S.W.2d 30, 34 [5] (Mo.App.1952). These parties, by their citations, e. g., Hamburg Realty Co. v. Walker, 327 S.W.2d 155 (Mo.1959); Krumm v. Streiler, 313 S.W.2d 680 (Mo. 1958); Shore v. Baumbach, 310 S.W.2d 901 (Mo.1958); Sandy Ford Ranch, Inc. v. Dill, 449 S.W.2d 1 (Mo.1970); Miller v. Warner, 433 S.W.2d 259, 262, [1, 2] (Mo. 1968), agree that five elements are essential to acquisition of title by adverse possession under Section 516.010, V.A.M.S. The possession must be (1) hostile, that is, under a claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous, for ten years prior to commencement of the action to perfect title by adverse possession.

Appellants concede the sufficiency of evidence to show that plaintiffs' use of the driveway strip was actual, open, and continuous, elements (2), (3), and (5); and they do not question the time of plaintiffs' possession. They contend only that the possession by plaintiffs was neither hostile nor exclusive.

Appellants argue that plaintiffs' possession cannot be deemed hostile because a family situation existed between the owners of the adjoining lots and they tolerated each other until 1969 when defendants erected the chain link fence. They argue that plaintiffs' possession cannot be deemed exclusive because defendants' daughter parked her car in the disputed strip and Flora Walker cared for the strip. They assert, without authorities, that "members of a family cannot be said to acquire title by adverse possession against one another in the absence of a clear showing of a positive, continued disclaim or disavowal of title by the person claiming adverse possession against the true owner." A more accurate statement of appellants' position is that in the circumstances of this case plaintiffs' use of the disputed strip was by defendants' permission; ergo, no adverse possession. See Bollinger v. Henry, 375 S.W.2d 161 (Mo. 1964); DeBold v. Leslie, 381 S.W.2d 816 (Mo.1964).

"Exclusive possession" means that the claimant must hold the possession of the land for himself, as his own, and not for another. "Hostile possession" means possession opposed and antagonistic to the claims of all others, and imports the occupation of land by the possessor with the intent to possess the land as his own. Gates v. Roberts, 350 S.W.2d 729, 732 [2, 3] (Mo.1961).

The statement demonstrates evidence upon which to find that the three-foot strip of land lying along the boundary between the parties' tracts had been in constant use by plaintiffs and their predecessors for thirty-two years after 1938 when Morritz Walker conveyed Tract A to Bertha Walker until subsequently conveyed to the Seebolds in 1970. The evidence also shows that there was a dispute going back to 1947 between plaintiffs' predecessor, Frank Walker, and defendant Oscar Walker, concerning location of the fence and driveway on defendants' property. Defendants' occasional use of the driveway, if so, would not alter their knowledge and notice of plaintiffs' use and claim of the strip, and that the fence and driveway were within the description of defendants' land. Frank Walker placed the chat on the driveway; and any use of the driveway by defendants from 1947 was without permission of Bertha Walker. Of value also in support of the court's findings was the judicial admission by Flora Walker that respondents had occupied her land for 30 years. The evidence showed that plaintiffs believed the 3-foot strip was part of their land; that they occupied it openly, notoriously, exclusively, and continuously in that belief. Only in 1969, when defendants gave their notice and built their fence was

there any realization by plaintiffs that their right, use, and title were in dispute.

Plaintiffs' situation is similar to that in Miller v. Warner, 433 S.W.2d 259, supra, where plaintiffs believed they had title to all the land they occupied for more than ten years, but their deed did not convey all of the land to them. In upholding plaintiffs' title by adverse possession, the court said: " 'If the possessor occupies the land in question intending to occupy that particular piece as his own, his occupancy is adverse. It is not necessary that he intend to take away from the true owner something which he knows belongs to another, or even that he be indifferent as to the facts of the legal title. It is the intent to possess, and not the intent to take irrespective of his right, which governs.' " 433 S.W.2d 1. c. 263.

Note again that evidence shows that plaintiffs' possession of the driveway area was exclusive from 1938 to 1970, particularly so from 1947 to 1970; and that no other person occupied the area except by plaintiffs' permission. Miller v. Warner, supra, 433 S.W.2d 1. c. 264 [8]. See also Mooney v. Canter, 311 S.W.2d 1 (Mo. 1958); Boeckmann v. Fitzpatrick, 491 S. W.2d 524, 527 (Mo.1973). And, with respect to acquisition by prescription in these circumstances, see Detert v. Lefman, 407 S.W.2d 66 (Mo.App.1966); Walters v. Tucker, 308 S.W.2d 637 (Mo.1958); Joplin Brewing Co. v. Payne, 197 Mo. 422, 94 S. W. 896 (1906).

Most of appellants' citations are concerned with the elements and proof of an adverse possession; however, three cited in their argument should be and are distinguished. Grimes v. Armstrong, 304 S.W. 2d 793 (Mo.1957), is not in point because it dealt with a driveway jointly used by the parties. White v. Wilks, 357 S.W.2d 908 (Mo.1962), dealt with lack of hostility in the possession of a life tenant in a 40-acre tract. Bach v. Standard Oil Co., 345 S. W.2d 144 (Mo.1961), held that a possession was not adverse where claimant recognized that defendants owned the tract in question when she tried to purchase it.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court. All of the judges concur.