**Fred M. COUNTS and Ladee Alice Counts, Respondents,**

v.

**Bernard H. MOODY and Vera M. Moody, Appellants.**

**No. KCD 29088.**

Missouri Court of Appeals, Kansas City District.

Aug. 28, 1978.

Roy W. Brown, Kansas City, for appellants.

John R. Moore, Moore, Lay & Deis, Platte City, for respondents.

Before PRITCHARD, P. J., SWOFFORD, C. J., and DIXON, J.

SWOFFORD, Chief Judge.

The respondents, owners of a tract of land in Platte County, Missouri, filed suit to quiet and determine title to a smaller tract lying to the east and contiguous to their land. They claimed ownership of the land by adverse possession. The appellants were the owners of a tract of land lying to the east of respondents' and they also claimed ownership and title to the strip of land in dispute. The case was tried to the court below, without a jury, and judgment was entered in favor of the plaintiffs-respondents and the defendants-appellants appealed therefrom. The parties will be referred to here as they were below. For clarity, a sketch of the properties here involved and their relationship to each other is here incorporated in this decision.

[See following illustration]

The defendants rely upon a single point or assignment of error on appeal, the propriety of which is doubtful under Rule 84.-04(d) because it is merely an abstract statement of the law. The purport of defendants' position here is that the court below erred as a matter of law in granting judgment to plaintiffs because they failed to establish by the evidence the necessary elements of adverse possession of the disputed land. This argument commits the defendants to the position that the evidence in this case, viewed in the light most favorable to the plaintiffs, does not, as a matter of law, establish any right in them to a judgment of title to the land by adverse possession.

■ This position requires a review of the evidence in somewhat complete summary. In so doing, the function to be performed here in the decision of this court-tried case is confined to an affirmance of the judgment below unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it represents an erroneous declaration or application of the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 [1–3] (Mo. banc 1976).

In 1939, by contract, Lewis W. Law and his wife, Bertha May Law, acquired the property now owned by the plaintiffs. The plaintiffs are the daughter and son-in-law of Mr. and Mrs. Law. Both of the Laws were deceased at the time of trial, which commenced May 25, 1976. The Law contract was supplanted by a deed from their predecessor in title dated January 1, 1950.

This deed described the land conveyed in metes and bounds followed by a general description that there were 12 acres in the tract. The parties to the conveyance believed for many years that it included all land up to a fence that was the east line of the property. Many years later, a survey disclosed that the metes and bounds description contained only 10.3 acres of land and did not include the 1.725 acres now in dispute, as shown on the attached sketch.

At the time the Laws acquired this property, their neighbors to the east were named Pierce. This property was conveyed to the defendants by deed on October 9, 1959. There was substantial evidence that during the years that the Laws and the Pierces were adjoining landowners and occupiers of their respective places, the fence line was considered by and treated as the boundary line between the two properties.

The Laws lived upon their property from the time of its acquisition in 1939 until their deaths. Mrs. Law, the survivor of the couple, died in February, 1975. The plaintiffs lived upon the land with the Laws for about six months in 1940. From 1940 to 1956, they visited the Laws at least once a week. They built a home on the property and the land was deeded to them by the Laws in 1968.

Across the north end of the disputed land a private driveway leads to the Law-Counts property from the county road, as shown on the sketch. The exact date this was established does not definitely appear, but it has apparently been in use for many years by the plaintiffs and their predecessors in title. It is significant to note that at the trial of this cause the defendants raised no objection that the title to the part of the disputed tract occupied by the driveway and triangular piece north of it could be quieted to plaintiffs.

The evidence was impressive that the Laws and the plaintiffs, over the years since 1939, claimed title to the disputed land and occupied and used it as their own. Law planted rose bushes along the west side of the fence; did repairs to the fence; had an oral agreement with both Pierce and the defendant Bernard Moody to share the maintenance of the fence; pastured livestock on the land; planted vegetable gardens, grapevines and trees thereon; mowed and cleared up the ground; paid taxes on it, based upon a 12-acre assessment; and that no one except the Laws and the plaintiffs have made any use of the land.

There was never any dispute about the fence being on the property line until the land was surveyed in 1969, and plaintiff, Fred Counts, asked the defendants to sign a quitclaim deed, which they refused to do.

The defendants acquired their parcel by deed in 1959 from Gladys Pierce. The defendant Bernard Moody's testimony was principally directed at contradicting the testimony that the Laws and Counts had used and occupied the land, and affirmatively, that he had mowed the land west of the fence, or had it mowed "a few times" because he "thought it was his". There is evidence that the last time he had done this was eleven years before the trial. He also stated he had made repairs to the fence. He always claimed some land west of the fence but didn't know the exact location of the property line.

On cross-examination, however, he stated that he thought he must have some land west of the fence when plaintiffs wanted him to sign the quitclaim deed. It was then he thought he had some land "over there". When he mowed the land eleven years ago that he was just "trying to be a good neighbor"; he was not claiming it then.

Further facts in this record, established by documentary evidence, should be noted.

Deeds in the chain of title of plaintiffs' land dated from 1890 leading to and including the deed to the Laws in 1950 described the land as containing 12 acres. Also, the plaintiffs introduced paid property tax statements showing that they had, in fact, paid such taxes on 12 acres of land, which included the disputed property.

A suit to quiet title is a special statutory action to adjudge the respective estate titles and interests of the persons claiming the land. *Gorman v. State High-*

*way Commission,* 552 S.W.2d 335, 336 [2] (Mo.App.1977). A person who claims title to land by reason of prescription or adverse possession for the period prescribed by the statutes of limitation, Section 516.010 RSMo 1969, may maintain an action on title thus acquired and seek a decree that the legal title to such land be quieted in him. *McRee v. Gardner,* 131 Mo. 599, 33 S.W. 166 (1895).

Parties seeking to establish such a title have the burden of establishing all of the elements of adverse possession. These elements are clearly and consistently defined by the courts of this state as (1) the possession must be hostile, that is, under claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous, over the statutory period. *Conran v. Girvin,* 341 S.W.2d 75, 90 [14] (Mo. banc 1960) and cases cited therein. See also, *Feinstein v. McGuire,* 297 S.W.2d 513, 515 [1] (Mo.1957), and *Franklin v. House,* 533 S.W.2d 243, 245 [1] (Mo.App.1976). For the purpose of testing whether such burden has been met, acts which constitute adverse possession depend upon the facts of each particular case, and consideration is given to the nature and location of the property, the uses to which it is put, the intent of the parties and those under whom they claim, and all other facts and circumstances of the possession and use. *Moise v. Robinson,* 533 S.W.2d 234, 242 [12] (Mo.App.1975).

As above noted, the defendants' single "Point Relied On" states the foregoing elements necessary to establish title by adverse possession in the abstract and states that the plaintiffs failed to establish these elements by proof "by a preponderance of the credible evidence". The argument portion of their brief is only slightly less vague. A careful study of that portion of the brief discloses that defendants are really urging two principal arguments.

The first of these is apparently based upon the fact that the deed to the plaintiffs' property described the land in metes and bounds; that such description did not include the disputed land; that the description therein did not refer to any monument (the fence line); and that in any event, the metes and bounds description takes "precedence over any so-called monuments (the old fence) * * *". By this argument the defendants are merely asserting that the subsequent surveys disclosed that the deed description did not constitute a conveyance of the disputed land. The record herein shows that no dispute existed at the trial (nor here) as to this fact. The plaintiffs do not depend upon a deed or other conveyance to establish title. Rather, they assert title by adverse possession, which imparts to the problem here an entirely different complexion than a case where formal conveyances form the basis for the dispute, as was the case in *Boxley v. Easter,* 319 S.W.2d 628 (Mo.1959), upon which authority defendants rely in support of this argument. Such reliance is misplaced, and *Boxley* is inapposite here.

The second argument brought forward by defendants is that since the deed to the plaintiffs made no mention that 12 acres were being conveyed (which would include the disputed land) and such conveyance was made in 1968, the plaintiffs had not "held the property for the prescribed statutory period (ten years)" and, therefore, if they are to succeed to this disputed land by adverse possession, they must do so by tacking any adverse possession of their predecessors in title, the Laws. The defendants argue that since the Laws did not convey by their deed or transfer the disputed land by some act (by gift or otherwise) to the plaintiffs, any rights the Laws may have had by adverse possession could not be tacked onto the adverse possession rights of the plaintiffs in order to satisfy the statutory period of limitation. In advancing this argument, the defendants overlook some basic facts in this record which call into authoritative control a rule of law which departs to some degree from the usual rules regarding adverse possession.

It should be here noted that the fact that the Laws and the plaintiffs on the one hand, and the defendants and those under whom they claimed on the other hand, were unaware that the fence line encroached upon land owned by the defend-

ants (and their predecessors in title) until the land was surveyed in 1969, would make the adverse possession of the Laws and the plaintiffs no less "adverse or hostile". This term is a legal concept and to come within its ambit actual malice, hostility, indifference, or intent to take the property which belongs to another is not necessary. The intent to possess, occupy, control, use and exercise dominion over such property satisfies the legal concept. *State ex rel. Edie v. Shain,* 348 Mo. 119, 152 S.W.2d 174, 177 [5, 6] (1941).

The undisputed facts in the case at bar establish that the land in dispute was physically enclosed on the east by a fence and was physically an integral part of the plaintiffs' property and possessed and used as such by the Laws and the plaintiffs continuously since 1939, a period of 36 years prior to the filing of this action. These facts call into application the principle stated in *Auldridge v. Spraggin,* 349 Mo. 858, 163 S.W.2d 1042, 1045 [11] (1942), where the court said:

> "The fact that the strip was not expressly described in the deeds in plaintiffs' chain of title does not affect plaintiffs' claim of ownership. The rule appears to be where land adversely held is included in the same enclosure with land owned and conveyed by the grantor, the taking of possession by the grantee of the entire enclosed area *creates a privity* with the grantor as to the portion not conveyed. 1 Am.Jur., Adverse Possession, § 158. *Thus, the possession of such a grantor becomes tacked to that of his grantee."* (Emphasis supplied)

In 3 Am.Jur. 2d, Adverse Possession, § 43, p. 132, it is stated:

> "* * * If a fence is constructed as a boundary line fence between two properties and if the parties concerned claim ownership of the land to the fence during the statutory period without interruption in their possession or control during that time, they will acquire title by adverse possession to any land that was improperly inclosed with or added to the land they owned at the time the fence was constructed. * * *"

This rule was cited with approval by the Supreme Court in *Crane v. Loy,* 436 S.W.2d 739 (Mo.1969) which case also reaffirmed the above-quoted statement and the ruling in *Auldridge v. Spraggin,* supra, as to tacking.

*Crane v. Loy,* supra, involved a dispute as to the title to a strip of land enclosed by a fence with land owned by the party (a church organization) asserting ownership by adverse possession. This party thus claiming ownership had purchased land contiguous to the disputed strip, within the same enclosure, about two years prior to the litigation, but its predecessors in title had occupied the disputed strip for many years. Its immediate grantor had been in possession of the disputed strip for 26 years under contract and deed. *Crane* further held (adopting a statement from 5 Thompson Real Property, § 2541, pp. 507–510 [and adopted as a rule in Missouri in earlier cases cited in *Crane* ]) l.c. 743:

> "Adverse possession for sufficient time to bar an action to recover real estate confers title, against any title whatsoever, as effectively as if the original owner had made a formal conveyance to the possessor. It operates as complete investiture of title. A title acquired by adverse possession is as good as the best when established."

Applying that rule to the *Crane* facts, the court stated, l.c. 743:

> "The *absolute title* by adverse possession being thus established in the respondents' predecessors the only problem is whether they have transferred that title and occupancy to Mr. John and the respondents. And that again as with adverse possession itself is a question of intention. * * * " (Emphasis added)

Under this record there can be no doubt that it was the *intention* of the Laws to take the land within the enclosure and to use and occupy it over the 29 years prior to the transfer to the plaintiffs, and that they did, in fact, accomplish this intention continuously and without interruption. Nei-

**140**

ther can any doubt arise from this record that the plaintiffs entertained and accomplished the same intention when they took possession of the enclosed land in 1968. Under the principles of *Crane*, the Laws became vested with absolute title to the disputed strip long before 1968 and their rights became those of the plaintiffs by tacking.

This record establishes by substantial and convincing evidence that all of the elements of adverse possession were established and the burden of proof convincingly met, and the judgment will be affirmed.

However, there appears to be an omission or typographical error in the metes and bounds description of the judgment as it appears in the transcript before this Court. This is found at T–100, line 19, in the EXCEPT portion of the description where the word "East" is omitted before the last word in that line. Compare plaintiffs' petition T–2, line 7.

The judgment is affirmed and the cause remanded to correct the legal description in the judgment, if necessary.

All concur.