The CITY OF SOUTH GREENFIELD,
Missouri, a municipal corporation,
Plaintiff-Respondent,

v.

Lee CAGLE and Effie A. Cagle, his wife,
William A. King and Almer King, his
wife, if living, if deceased, their un-
known consorts, heirs, devisees, donees,
alienees or immediate mesne or remote,
voluntary or involuntary grantees and
John H. Howard and Sarah C. Howard,
his wife, if living, if deceased, their un-
known consorts, heirs, devisees, donees,
alienees or immediate mesne or remote
voluntary or involuntary grantees, De-
fendants-Respondents,

v.

Christie B. JONES, Intervenor-Appellant.

No. 11052.

Missouri Court of Appeals,
Southern District,
En Banc.

Nov. 8, 1979.

Rehearing Denied Dec. 3, 1979.

No appearance for plaintiff-respondent.

Robert L. Payne, Greenfield, for defendants-respondents Cagle.

Robert Stemmons, Mt. Vernon, for intervenor-appellant.

PREWITT, Judge.

Intervenor appeals from a judgment denying her request to quiet title in her to a 40 × 165 foot parcel of land in South Greenfield, Missouri.

Plaintiff filed a petition for injunction, seeking to have removed three fence posts installed by defendants Cagle, purportedly located on an 80 foot public roadway. Apparently 80 feet had been set aside for a roadway, but not all of it was being used. The used portion was approximately 25 feet wide. Intervenor claimed ownership of the property south of the portion actually used as a roadway, which was the south 40 feet of the property described in plaintiff's petition. She contends that title had been established in her by adverse possession. The dispute before us is between defendants Cagle, who live north of the roadway, and intervenor, whose residence is south of the roadway and immediately adjacent to the disputed tract. The property in dispute commences 5 to 6 feet from her front porch, where one of the posts was installed, and extends to the roadway. The property is unimproved except for the fence posts and six trees which intervenor planted five or six years after she acquired her residence and moved in during 1954. She had the disputed land mowed with the rest of her front yard thereafter for 17 to 20 years. She considered it part of her yard. The property was not fenced and she did not have a deed to it nor did she pay the property taxes upon it. Before intervenor acquired her residence, her immediate predecessors used the parcel or a portion of it, to play croquet.

There was evidence that for at least the past 50 years the property had been maintained and used by whoever occupied intervenor's house. Defendants Cagle never tried to possess the property prior to a survey in 1971 and admit that intervenor mowed it, or had it mowed, and planted the trees. Intervenor said she mowed it until 1974 but defendant Lee Cagle testified that he started mowing it soon after the survey in 1971. Shortly after the survey, he put in fence posts and keep out signs on the premises. He had seen her mow it and knew she claimed it from the time he acquired his residence and moved there in 1965 until the survey in 1971. He did not know that his deed included land south of the roadway until the survey. After he put in the posts, she did not contest his actions until this suit.

Sometime after intervenor moved on the premises, she was informed by a neighbor that the city owned the property. She says this occurred a few years after 1954 and could have been after 1967. She didn't recall when she was told it was city property. She continued to mow it and take care of it until Mr. Cagle ordered her nephew, who lived with her and took care of the yard, to stop mowing the property. She had it mowed every week and sometimes

more often during the summer. Except for whether Mr. Cagle took over the mowing in 1971 or 1974, there is no substantial dispute in the evidence. Intervenor claims title superior to both plaintiff and defendants.

■ The trial court found that plaintiff did not show that the posts obstructed the roadway and denied the injunction request and that intervenor's evidence "failed to prove that she had by adverse possession established a claim". Title was found to be in defendants Cagle. No findings of fact were asked for or made. Under Rule 73.01, V.A.M.R., our review in this non-jury case is to sustain the trial court's determination unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976).

■ Intervenor cannot acquire title by adverse possession against plaintiff City of South Greenfield. The statutes of limitation do not extend to public uses. § 516.-090, RSMo 1969; *City of Poplar Bluff v. Knox*, 410 S.W.2d 100, 103 (Mo.App.1966); *Brotherton v. City of Jackson*, 385 S.W.2d 836, 842 (Mo.App.1965). We now consider her claim as against defendants.

■ Intervenor, in seeking to establish title by adverse possession, has the burden of establishing possession that is: (1) hostile, that is, under claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous, over the statutory period. *Counts v. Moody*, 571 S.W.2d 134, 138 (Mo.App.1978). Whether the burden has been met depends upon the facts of each particular case, and consideration is given to the nature and location of the property, the uses to which it is put, the intent of the parties and all other facts and circumstances of the possession and use. Id. 571 S.W.2d at 138.

■ We review the elements in the order above stated to determine if intervenor met her burden as against defendants. Her possession must be hostile, that is, under a claim of right. "Hostile possession" means possession opposed to the claims of all others and imports the occupation of land by the possessor with the intent to possess the land as his own. *Walker v. Walker*, 509 S.W.2d 102, 106 (Mo.1974). To be hostile, it is not necessary to have actual malice, hostility, indifference or intent to take the property which belongs to another. The intent to possess, occupy, control, use and exercise dominion over the property is sufficient. *Counts v. Moody*, supra, 571 S.W.2d at 139. It is undisputed that intervenor claimed the property as hers and thought it was hers, at least until she was erroneously told it was owned by the city. Apparently the plaintiff-city has an easement right for a public roadway through the property. Defendants Cagle contend that once she was told the city owned the property, intervenor no longer claimed it as hers. The record does not show that thereafter she was not claiming it. It merely shows that she was informed that the city owned it. She did not thereafter stop mowing it and taking care of it. Her acts of use continued to be the same. The intent with which the occupant has held possession is to be determined from all the surrounding circumstances and especially from his acts. 3 Am.Jur.2d, Adverse Possession, § 35, p. 121. When adverse possession is once shown, it will be presumed, in absence of evidence to the contrary, to have continued in the possessor. *Cash v. Gilbreath*, 507 S.W.2d 931, 935 (Mo.App.1974). There was no evidence that after she received notice that the city may be claiming the property that the adverse character of her possession ever changed. Mr. Cagle moved across the roadway from the property in 1965 and between that time and 1971 when he put in the fence posts, he admitted that Mrs. Jones was claiming it.

■ Even if she knew that the property was not within her boundary, this does not prevent a valid claim of adverse possession. The important factor is not whether she knew the true line, but what part she intended to possess. *Slentz v. Cherokee Enterprises, Inc.*, 529 S.W.2d 495, 498 (Mo.App.1975). It is the intent to possess and

not the intent to take from the true owner that governs. *Sanderson v. McManus*, 252 S.W.2d 351, 356 (Mo.1952). To acquire title by adverse possession, the possessor need not intend to take away something which belongs to another and the possessor may even be indifferent as to the facts of legal title. *Cash v. Gilbreath*, supra, 507 S.W.2d at 934. Even if intervenor thought that the city had a prior interest, that would not defeat her claim of adverse possession. Possession need not be hostile as against the government. 3 Am.Jur.2d, Adverse Possession, § 32, pp. 115–116; 2 C.J.S. Adverse Possession § 65, pp. 740–741. See also *Stonum v. Davis*, 348 Mo. 267, 152 S.W.2d 1067, 1071–1072 (1941). We believe that the evidence supported no reasonable conclusion but that at least from 1954 until 1971 intervenor made a claim of right to the property.

We next consider if her possession was actual. What acts will characterize possession as "actual" depend on the nature and location of the property, the uses to which it can be applied and all the facts and circumstances of a particular case. *Allen v. Wiseman*, 359 Mo. 1026, 224 S.W.2d 1010, 1013 (1949); *Frazier v. Shantz Real Estate & Investment Co.*, 343 Mo. 861, 123 S.W.2d 124, 131–132 (1938). Intervenor exercised the normal incidences of possession to a residential front yard. She arranged for having it mowed, planted decorative trees, and used it to travel across, including going to her garden. No one else, for at least 17 years, exercised any rights of possession over the premises. We believe that under the circumstances here, the use of the property showed that intervenor had actual possession from 1954 until 1971.

The third element is whether the possession was open and notorious. Numerous witnesses testified that intervenor cared for the property as a lawn and that residents in the community considered it a part of her yard. Photographs introduced in evidence show that it appears to be what normally would be considered the front yard of her residence. Defendant Lee Cagle testified that intervenor mowed, or had the land mowed, until the survey. His house was just across the road and he saw her, or someone for her, mowing that strip and knew that she claimed it as part of her front yard. He admitted that the trees were planted before he came in 1965. To be open and notorious possession, there need not be a fence, building or other improvements. It suffices that visible and notorious acts of ownership are exercised over the premises for the time required by the statute. *Sanderson v. McManus*, supra, 252 S.W.2d at 356. We believe the evidence established that intervenor's claim was open and notorious.

We next decide if her evidence showed exclusive possession. "Exclusive possession", for the purpose of establishing adverse possession, means that the claimant holds the possession of the land for himself as his own and not for another. *Walker v. Walker*, supra, 509 S.W.2d at 106. All of intervenor's acts were for herself and she considered the property a part of her front yard. She was not intending to hold possession for anyone else. This was not disputed in the evidence. Exclusive possession was sufficiently shown.

The last element is that intervenor's possession must be continuous. Again, there was no dispute here. Her acts continued from 1954 through 1971 or 1974. This exceeded the ten year minimum. § 516.010, RSMo 1969. Other evidence showed possession by her and her predecessors for 50 years or more. We believe this element to be satisfied.

Intervenor made at least a prima facie case on the issue of adverse possession. Having done so, the burden of going ahead on that issue shifted to the defendants Cagle. *Slentz v. Cherokee Enterprises, Inc.*, supra, 529 S.W.2d at 496. Their evidence did not dispute any essential facts but confirmed intervenor's claim. It showed that until the survey in 1971, they made no claim to the property and knew that appellant was claiming it, had planted trees on it and had been mowing and using it.

Defendants Cagle contend that it is significant that intervenor did not pay taxes on the property and claim that they paid them. Payment of taxes does not create title and non-payment does not divest title. *Slentz v. Cherokee Enterprises, Inc.,* supra, 529 S.W.2d at 499. If title by adverse possession was vested in intervenor before the survey in 1971, the fact that she did not immediately contest appellant's taking possession of the property, does not divest her of that title. Adverse possession for the statutory period establishes an indefeasible legal title in the possessor, the title of the record owner is divested, and that title is not lost by abandonment, or failure to assert it after it has been perfected. *La Grange Reorganized School District No. R–VI v. Smith,* 312 S.W.2d 135, 139 (Mo. 1958).

We believe that the undisputed evidence established intervenor's claim of title by adverse possession in the property as against defendants. The trial court's determination as between defendants Cagle and intervenor was against the weight of the evidence and erroneously applied the law.

That portion of the judgment decreeing title to the subject property in defendants Cagle, is reversed and the cause is remanded for the entry of a judgment quieting title in the disputed parcel in intervenor, subject to the roadway rights of the plaintiff.

All concur, except FLANIGAN, J., recused.