**KISSINGER PRIVATE LEVEE SYSTEM, et al., Plaintiffs-Appellants,**

v.

**Marion MACKEY, et al., Defendants-Respondents.**

No. 43238.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 25, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 16, 1981.

Application to Transfer Denied
Dec. 14, 1981.

Branham Rendlen, Rendlen, Rendlen & Ahrens, Hannibal, Phillip G. Smith, Louisiana, for plaintiffs-appellants.

John M. McIlroy, Sr., McIlroy & Millan, and David H. Ash, Bowling Green, for defendants-respondents.

SNYDER, Judge.

The Kissinger Private Levee System and its members appeal from the trial court's judgment dissolving a temporary restraining order and refusing to grant them an injunction to prevent respondents, the Clarksville Levee Association and its members, from connecting their Clarksville Levee to appellants' Kissinger Levee. The judgment is affirmed.

Appellants challenge the trial court's judgment upon the grounds that respondents should be enjoined from making the levee connection because: (1) appellants had established title by adverse possession to the area where the Clarksville and Kissinger Levee were to be joined; (2) appellants' lease and easement to the area where the two levees were to be joined gave appellants exclusive rights to the area; (3) appellants had the power to refuse respondents permission to join the Clarksville Levee to the Kissinger Levee by virtue of § 244.120(2), RSMo 1978; and (4) an injunction was the proper method of enforcing appellants' rights.

The judgment in this court-tried case must be affirmed unless it is against the weight of the evidence or is not supported by substantial evidence or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976).

The Kissinger Private Levee System and the Clarksville Levee Association are separate groups of individual landowners who have joined together to build and maintain levees for the purpose of protecting farm lands from the ravages of the floodwaters of the Mississippi River. Neither organization is a levee district incorporated under the provisions of Chapter 245, RSMo 1978, or predecessor statutes. Although a Clarksville Levee District was incorporated in 1920, the corporation became inactive within a relatively short time after incorporation, and the 50-year life of the corporation would have expired in 1972.

The Kissinger Levee was first completed in approximately 1920. The shape of the levee forms a rough "U" with the open end of the "U" to the west at bluffs and the bottom of the "U" along the Mississippi River. The high part or crest of the levee is approximately 15-feet wide. The slope of the levee from the crest to the base or toe is approximately 35-feet wide on each side of the crest. It is the northern flank of the "U"-shaped levee which runs generally from west to east which is the focus of the dispute between the parties.

A county road intersects the north flank of the Kissinger Levee. Respondent Mackey's property can be described as lying generally to the east of the county road and to the north of the Kissinger Levee.

Respondents have partially constructed a levee known as the Clarksville Levee to the north of, and roughly at right angles to, the north leg of the Kissinger Levee. The Clarksville Levee runs generally from north to south. Respondents propose to join the Clarksville Levee to the Kissinger Levee at a point roughly 30–feet east of the center of the county road on the north side of the Kissinger Levee on land which is a part of the record Mackey property. The levee joinder can be described as a "T" connection with the Clarksville Levee dead ending from the north at the Kissinger Levee which runs generally east and west. The dispute arises over which parties own or have a right to control the land where the proposed joinder of the two levees would be located.

An easement was established on the Mackey property in 1946. In that year, appellants acquired a lease from the Lowell Pattons and an easement from the Kenneth Pattons for the purposes of excavating, removing and using the dirt and other material on the servient tract for the building, enlarging, heightening, repairing, draining and maintaining the Kissinger Levee. The lease describes an area fifty feet wide extending along the southern border of the Mackey property. The easement describes an area fifty feet wide extending along the northern base of the Kissinger Levee. The lease and easement areas do not coincide but overlap. A fence once existed along the north flank of the Kissinger Levee the width of a wagon or tractor to the north of the base of the levee. The record does not reveal who built or maintained the fence but it had been torn down for many years before the dispute about the levee connection began.

Respondent Mackey entered a contract to purchase the Mackey property in 1957 and acquired the deed to the property in 1960. A portion of the property was acquired from the Kenneth Pattons and a portion from Kenneth and Lowell Patton who had undivided one-half interests in the second portion. Title to the Mackey property was conveyed subject to existing easements, levees, roadways and public utilities.

John Coulter, who was the county land surveyor for Pike County at the relevant time, testified for respondents that, as a part of the survey of the entire section in 1976 to 1977, he had surveyed a portion of the area in question. In doing his survey, the witness had tied into a government monument at Anada, Missouri. The witness had surveyed the land west of the county road intersecting the north leg of the Kissinger Levee. To the west of the county road, the section line runs generally along the crest of the levee. The witness also established a monument to the east of the place the county road crosses the Kissinger Levee.

Wesley Wagner, the deputy county surveyor completed the survey which included the Mackey property east of the county road. The witness testified that, beginning at the county road, the southern boundary of the Mackey property is five feet north of the center of the crest of the Kissinger Levee. At the east end of the Mackey property the boundary line is approximately 26–feet north of the crest of the Kissinger Levee. The Mackey property line generally follows the crest of the Kissinger Levee for 1,022 feet east of the county road before the levee changes direction slightly to the south and the Mackey property line moves down the slope of the levee. Respondents proposed to join the Clarksville Levee to the Kissinger Levee at a place where respondent Mackey's boundary is on the crest of the Kissinger Levee.

Witness Wagner had prepared two plats illustrating his survey which showed the location of the Mackey property line, the Kissinger Levee, and the areas covered by the appellants' lease and easement. The plats showed that the area of appellants' lease covered an area immediately to the north of and along the southern boundary of the Mackey property. The area of appel-

lants' easement is generally parallel and to the north of the lease area but overlaps the lease area somewhat, the overlap being greater as the lease and easement areas extend to the east. On cross-examination the witness acknowledged the Clarksville Levee would have to traverse an area covered by appellants' lease and easement to be joined to the Kissinger Levee. The witness further acknowledged his survey had not taken into consideration a 1901 Lincoln County surveyor's record prepared for Wells, Wells, Boone and Shafer by Lincoln and Pike County surveyors. A notation on the record indicated the "[s]urveyors had disagreed as to the method of establishing the township corners but three of the parties agreed to the compromised line" further north of the line marked as the township line. Neither a Wells, Boone or Shafer were shown to have been prior owners of the Mackey property.

An engineer for the United States Corps of Engineers testified for appellants that the Corps of Engineers recognizes the Kissinger Private Levee System as a private levee system. The Corps of Engineers has inspected the Kissinger Levee at least every other year since 1956. The entire Kissinger Levee would presently be called a primary levee by the Corps of Engineers. If flood damaged, government assistance is available. If a levee were joined to the north leg of the Kissinger Levee, as respondents wish to do, and if the levee joined to the Kissinger Levee provided protection equal to or greater than the Kissinger Levee, that portion of the Kissinger Levee running from the place the levees were joined to the high ground away from the river would no longer be a primary levee. A non-primary levee might not be eligible for government assistance. In each situation, damages are assessed upon an individual basis, and the engineer for the Corps of Engineers had no opinion whether the section of the Kissinger Levee affected by joining the Clarksville Levee would actually no longer be eligible for government aid if damaged. The witness acknowledged the government does assist in repairing secondary levees if the levees provide protection for human life.

Respondents introduced evidence that the Kissinger Levee protects people in at least three households who live within the area.

Appellants also introduced testimony by another expert witness, a civil engineer who had worked with hydraulics and levee systems. Appellants' expert testified that because of the slope of the river which would make the water elevation upstream higher than downstream, the north flank of the Kissinger Levee would be exposed to higher water elevations should a joined Clarksville Levee fail during flood conditions than if the Clarksville Levee were not joined. Because of the higher water elevations upstream, water breaching the Clarksville Levee upstream would stabilize within the levee at those higher water elevations against the north flank of the Kissinger Levee. This would result in greater pressure against the north flank of the Kissinger Levee and, in the case of serious flooding, could make the difference whether the Kissinger Levee were topped or not.

Respondents also introduced expert testimony by a civil engineer with experience in designing levees. In the opinion of the respondents' witness, if the material, compaction and construction used to join the Clarksville Levee to the Kissinger Levee were the same, no harm would be caused to the existing levee. Although the witness had not conducted compaction tests, a visual inspection of the two levees indicated similar materials were used in constructing the levees. In the witness's opinion, joining the two levees would provide greater protection to the Kissinger Levee.

Appellants' first point relied on challenges the trial court's ruling that the Kissinger Levee and lands on which it was located were held under a lease or easement and that appellants could not, therefore, acquire title by adverse possession. Appellants base their contention upon the alternative theories that either (1) the levee was constructed in 1920, and that the appellants acquired title by adverse possession before the lease or easement was granted or (2) the area to which the lease or easement applies was to the north of the levee and

adjoining it. The trial court's conclusion that the land where respondents propose to join the Clarksville and Kissinger levees was on the Mackey property and appellants' rights governed by the terms of their lease and easement was supported by the evidence. Therefore, appellants' first point relied on must be ruled against them.

The fundamental elements necessary to establish a prescriptive right to property by adverse possession are: (1) the possession must be hostile and under claim of right; (2) possession must be actual; (3) possession must be open and notorious; (4)possession must be exclusive and (5) possession must be continuous for the requisite period. *Tallent v. Barrett*, 598 S.W.2d 602, 606[7] (Mo. App.1980). To support their claims, appellants had the burden of proving that they had acquired title by adverse possession to that portion of the record Mackey property where the Kissinger Levee is located. *City of South Greenfield v. Cagle*, 591 S.W.2d 156, 159[3] (Mo.App.1979). Failure to prove any one element of adverse possession defeats the claim. *Tallent v. Barrett, supra.* If the claimant's use of the property is permissive, the possession of land cannot be adverse. *Bollinger v. Henry*, 375 S.W.2d 161, 164[4] (Mo.1964); *Oberg v. Alberswerth*, 592 S.W.2d 872, 875[5] (Mo.App. 1980).

■ The critical matter raised in appellants' first point relied on is whether appellants acquired title to that portion of the record Mackey property on which the Kissinger Levee now exists prior to appellants' receipt of permission to use the land by their 1946 lease and easement. If title to the land was vested in appellants or their predecessors by adverse possession prior to 1946, the title of the record owner would be divested, *City of South Greenfield v. Cagle, supra*, at 161[21–22], and permission to use the land granted in 1946 would not destroy appellants' title. *See Speer v. Carr*, 429 S.W.2d 266, 268–269[5–6] (Mo. 1968) (prescriptive easement case).

■ Appellants' evidence was that the Kissinger Levee has existed in the same general location since roughly 1920, as found by the trial court. The evidence also supports the conclusion that a portion of the Kissinger Levee is now in part located on the record Mackey property and that this area is the area described in appellants' lease and easement. At the point where respondents propose to join the Clarksville Levee to the Kissinger Levee, the southern boundary of the Mackey property, as established by survey using title instruments, is near the center line of the crest of the Kissinger Levee. Evidence was given that, since the original construction of the Kissinger Levee, the height of the levee has been raised several times and was substantially raised between 1965 to 1972. Because a levee's slope should be maintained at approximately a four or three to one slope, if a levee is raised, the base of the levee must be widened.

Appellants introduced evidence by property owners and area residents that the Kissinger Levee was repaired and enlarged by adding to the south side of the levee and that the north toe of the levee was never moved. Nevertheless, some evidence was introduced that the north side of the north flank of the Kissinger Levee was also improved several times during Mackey's ownership of the property to the north of the levee. The evidence is not uncontroverted but would support the conclusion that, during the 50 years after the Kissinger Levee was first erected, the levee has encroached upon the Mackey property. There is no evidence when the encroachment occurred, but the probabilities would support the inference the encroachment occurred after appellants obtained a lease and easement to the Mackey property which enabled them to build, enlarge, heighten, repair, drain and maintain the Kissinger Levee and when a major improvement to the Kissinger Levee was affected between 1965 to 1972, long after the easement was granted and the lease entered into.

Appellants cite cases holding that, in the absence of some showing that the use of property was permissive in origin, the burden is on the landowner to show the use was permissive rather than adverse. *Speer*

v. Carr, supra at 268[4]; *Fassold v. Schamburg*, 350 Mo. 464, 166 S.W.2d 571, 572[1–2] (1942); *Carpenter-Union Hills Cemetery Association v. Camp Zoe, Inc.*, 547 S.W.2d 196, 200[3] (Mo.App.1977) (easement). In the case under review there was evidence showing the Kissinger Levee to be on the Mackey property permissively rather than adversely. There was also evidence to support the trial court's conclusion that the area of the Mackey property where part of the Kissinger Levee is now located is a part of the area described in the appellants' lease and easement. The court's conclusion was not controverted by evidence that appellants had acquired adverse possession to that particular portion of the Mackey property or that the appellants' lease and easement was applicable only to land further north than that area where the Kissinger Levee was located. There was substantial evidence to support the trial court's conclusion that appellants' use of the Mackey property was permissive.

■ Appellants' second point relied on alleges appellants asserted proprietary rights to the property for the requisite amount of time to acquire title by adverse possession, and no challenge was made to appellants' claim of ownership until the start of the proceedings resulting in this appeal. Because this opinion upholds the trial court's conclusion that the area of the Mackey property claimed by appellants was governed by a lease and easement, thus precluding appellants' claims of adverse possession, any further consideration of the elements of adverse possession alleged by appellants is unnecessary.

Appellants' third point relied on charges the trial court erred in concluding appellants' rights in the area of appellants' lease and easement were not exclusive because the instruments granting the lease and easement did not retain or reserve to the grantor any rights and no other entity was granted any rights in the land. Appellants' point is ruled against them.

■ The parties have treated appellants' 1946 lease and easement as establishing an easement to use a portion of the Mackey property to maintain and improve the Kissinger Levee.[1] An easement is not the complete ownership of land with a right to use the land for all lawful purposes, but it is a right to one or more particular uses, ordinarily granted, as in the case to be decided, by the instrument conveying the easement and describing the land to which the use granted attaches and the particular permitted uses. *Farmers Drainage District of Ray County v. Sinclair Refining Co.*, 255 S.W.2d 745, 748[2] (Mo. 1953). Therefore, the owner of land burdened with an easement has the right of full dominion and use of his property in any way not inconsistent with the easement. *Stotzenberger v. Perkins*, 332 Mo. 391, 58 S.W.2d 983, 987[8] (1933); *Kiwala v. Biermann*, 555 S.W.2d 663, 666[4] (Mo.App.1977); *Reutner v. Vouga*, 367 S.W.2d 34, 42[11] (Mo.App.1963).

In the case to be decided, respondent Mackey is entitled to use his property in any way which is not inconsistent with appellants' easement to use the Mackey property to maintain and improve the Kissinger Levee. Appellants' easement would not preclude respondent Mackey from construction on the Mackey property within the area of the easement. *Reutner v. Vouga, supra*.[2] Appellants did not demonstrate

1. At the time of argument, appellants submitted the citation to an additional case, *Steinke v. Leicht*, 235 S.W.2d 115, 123[9–11] (Mo.App.1950) (holding a landowner was not entitled to self-help methods of forcibly ejecting one in peaceful possession of property but must resort to legal process). The cited case involves a dispute concerning the right to possession of a portion of rural property leased to some tenants who used the property for a clubhouse. *Steinke v. Leicht, supra*. The parties in the case under review have not, however, treated the 1946 lease as anything other than an easement in their contentions.

2. In *Reutner v. Vouga*, 367 S.W.2d 34 (Mo.App. 1963), a roadway easement existed between the defendants' and the plaintiffs' properties. One-half of the easement was on defendants' property and one-half was on plaintiffs' property. The appellate court held defendants continued to own that portion of the easement located on defendants' land and could use the land for any purpose not inconsistent with the easement. The court held the defendants could construct

any interference with their specific easement rights as was done in *Drainage District No. 48 of Dunklin County v. Small*, 318 S.W.2d 497, 502–504[7–9] (Mo. banc 1958) (interference with easement of flowage). The trial court's conclusion that appellants' lease and easement did not give appellants exclusive rights to use the area of the Mackey property covered by the lease and easement is correct. Evidence was admitted which would support the conclusion that respondents' erection and connection of the Clarksville Levee on the Mackey property did not preclude appellants from continued maintenance of the Kissinger Levee.

Cases cited by appellants do not require a different result but instead merely support appellants' claims that respondent Mackey had notice of appellants' easement and was bound by the restriction on his use of his property. *Drainage District No. 48 of Dunklin County v. Small, supra; Missouri Power & Light Co. v. Thomas*, 340 Mo. 1022, 102 S.W.2d 564 (1937). The appellants' easement was a binding restriction upon use of the Mackey property, but evidence admitted in the case simply was not inconsistent with the conclusion respondent Mackey's proposed use of his property by connecting the Clarksville Levee did not preclude use of appellants' easement.

■ Appellants' fourth point relied on is that the trial court erred in concluding respondents were entitled to connect their levee to appellants' because (1) to do so, respondents would have to trespass upon lands to which appellants had the exclusive right by lease or easement; (2) the connection of the two levees would be on land owned by appellants by adverse possession; (3) respondent Mackey acquired his property subject to appellants' levee, lease and easement; and (4) appellants never granted respondents permission to cross the area of appellants' lease and easement or to attach respondents' levee to appellants' levee. Except insofar as their point complains that appellants did not grant respondents permission to enter upon the area of the ease-

ment or Kissinger Levee or to join the Clarksville Levee to the Kissinger Levee, appellants' point relied on duplicates points previously ruled adversely to appellants. Insofar as appellants alleged the trial court erred in not requiring respondents to obtain appellants' permission to cross the area of appellants' easement and lease and to join the Clarksville Levee to the Kissinger Levee, that point is now ruled against appellants.

Appellants' contention respondents were required to obtain appellants' permission to join the Clarksville to the Kissinger Levee is based upon § 244.120(2), RSMo 1978 which provides:

"The owner or owners of land within or without any levee or drainage district organized under the laws of this state shall be permitted to connect a ditch, tile or levee constructed under the provisions of this chapter with any artificial ditch, drain or levee of any drainage or levee district on such terms as the board of supervisors of such drainage or levee district or the court, under which any such district has been organized, may prescribe."

The trial court found § 244.120(2), RSMo 1978 was not applicable because neither the Clarksville Levee nor Kissinger Levee were "organized under the laws of this state" but were organized by informal private associations. The trial court concluded the consent required by § 244.120(2), RSMo 1978, was required only if the system with which connection was sought was a drainage district, § 242.150, RSMo 1978, or a levee district, § 245.060, RSMo 1978, which was organized by the court. The trial court concluded the statutory intent was not to require consent to join two private levees.

Neither the parties nor independent research produced authority dispositive of the question whether the term "board of supervisors" referred to in § 244.120(2), RSMo 1978, is restricted to the governing bodies of drainage districts and levee districts organized by the court pursuant to statutory pro-

---

manholes, connect such to a culvert under the roadway and construct a new inlet to the cul-

vert on defendants' half of the easement. *Reutner v. Vouga, supra* at 42[11].

ceedings, or whether the term refers to the governing body of any private, informally organized drainage or levee system. A reading of the statutes dealing with drainage and levee rights and cases interpreting the statutes, however, lends persuasive support for the trial court's interpretation that the governing body of the Kissinger Levee System is not a "board of supervisors" under § 244.120(2), RSMo 1978.

Appellants' evidence established that the Kissinger Levee has been managed by a voluntary unincorporated association of land owners and managers of land within the levee system for, some witnesses estimated, approximately 40 years. Meetings of the association have been infrequent and sporadic and sometimes accomplished by telephone. Although certain members of the association were denominated as officers of the association, their duties were not clearly defined. The association functions chiefly to determine the assessment per acre of land within the system necessary for continued maintenance of the Kissinger Levee. The evidence supports the trial court's finding that the Kissinger Levee System is a private system not organized and managed under the elaborate statutory schemes set forth in Chapters 242, 243, 245 and 246, RSMo 1978. If the Kissinger Levee System has statutory recognition, it must be under Chapter 244, RSMo 1978, providing for private drainage rights.

There are considerable differences between the private drainage rights recognized in Chapter 244, RSMo 1978, and the complex systems recognized in the other chapters dealing with drainage systems. See *Dillen v. Remley,* 327 S.W.2d 931, 934–935 (Mo.App.1959). A drainage district organized in the circuit court pursuant to Chapter 242, RSMo 1978, or a levee district organized by the circuit court pursuant to Chapter 245, RSMo 1978, is a public corporation, and its purpose is to exercise governmental functions. *Fort Osage Drainage District of Jackson County v. Jackson County,* 275 S.W.2d 326, 330–331[8] (Mo. 1955) (holding that, although not elected as required by statute, members of the board of supervisors of a drainage district organized

under Chapter 242 were de facto officers authorized to act for the district); *Halls Levee District of Buchanan County v. Hauber,* 461 S.W.2d 16, 23 (Mo.App.1970) (holding a levee district organized under Chapter 245 was entitled to a mandatory injunction to remove an obstruction to a drainage ditch which was a part of the levee district). Although the public drainage and levee systems call for the election of a board of supervisors, § 242.150 and § 245.060, RSMo 1978, there is no provision in Chapter 244, RSMo 1978, for a "board of supervisors." In considering the relationship between Chapter 244, RSMo 1978, and the chapters concerning public systems, the appellate court has ruled that private systems are not prohibited by statutes establishing public systems because the terms under which a private system may be joined to a public system may be prescribed by the public system or the court pursuant to § 244.-120(2), RSMo 1978, and its predecessor statutes. *Dillen v. Remley, supra,* at 935[7].

The trial court's conclusion that appellants, as a private system, did not have authority pursuant to § 244.120(2), RSMo 1978, to prescribe the terms by which another private system could be joined to the Kissinger Levee System does not misstate the law or incorrectly apply the law to the facts in evidence.

Appellants' fifth point relied on is that the trial court erred in refusing to enjoin respondents from entering upon appellants' lands because such action would constitute a trespass upon appellants' land and cause injury to appellants' land which was irreparable, illegal and for which no adequate remedy at law exists. Appellants' evidence did not establish that appellants had exclusive property rights in the record Mackey property which would preclude respondents from connecting the Clarksville and Kissinger Levees where the levees were proposed to be joined. Because this opinion upholds the trial court's conclusion that no trespass to appellants' property rights is threatened by respondents' proposal to join the Clarksville Levee to the Kissinger Levee, further discussion of appellants' final point is unnecessary.

Appellants have not demonstrated any erroneous finding of fact or conclusion of law by the trial court. The judgment is affirmed.

CRIST, P. J., and McKENZIE, Special Judge, concur.