Monte **GURWIT**, et al.,
Plaintiffs/Respondents,

v.

Jacob **KANNATZER**, et al., Defendant,

Eugene **Gruender**,
Defendants/Appellants.

No. WD 42111.

Missouri Court of Appeals,
Western District.

March 6, 1990.

Rehearing Denied April 24, 1990.

Elton W. Fay, Columbia, for defendants/appellants.

Robert C. Smith, Gena J. Trueblood, Columbia, for plaintiffs/respondents.

Before LOWENSTEIN, P.J., and KENNEDY and GAITAN, JJ.

PER CURIAM:

The trial court after a court-tried case entered judgment quieting title in plaintiffs Monte and Martha Gurwit, husband and wife, to a certain 17–acre tract of land in Boone County. Defendants Eugene H. Gruender and Dorothy Gruender, husband and wife, and John R. Gruender and Karen Gruender, husband and wife, have appealed. An earlier appeal of this case was dismissed by this court because the judgment was not final. *Gurwit v. Kannatzer,* 758 S.W.2d 486 (Mo.App.1988).

The first question presented is whether the evidence supported the judgment of the trial court. The judgment was based upon the court's finding that the Gurwits had acquired title to the disputed tract by ten years' adverse possession under section 516.010, RSMo 1986.

The tract of land in dispute is located in Boone County, Missouri, and is described as: All that part of the East Half of the Southeast Quarter of Section 4, Township 50 North, Range 13 West, lying north and west of the Oak Grove School Road and south of Stidham Road, now vacated.

The Oak Grove School Road enters the east half of the southeast quarter of section 4 from the west at a point 382 feet north of the southwest corner of the 80–acre tract; curves to the northeast to its easternmost point 398 feet north and 391 feet east of the point where it entered; thence curves toward the northwest and proceeds in almost a straight line a distance of 1,266 feet to where it intersects with Stidham Road at a point 208 feet east and 1,518 feet north of the point where it entered the 80–acre tract. The disputed 17–acre tract is embraced then, on the south and west, within the curve of Oak Grove School Road, with Stidham Road as its north boundary, and with the west line of the east half of the southeast quarter as its west boundary.

The plaintiffs Gurwit took possession of the property (if they did possess it, a disputed point in the case) in 1963. At that time they bought from Mr. and Mrs. Orval Putnam the half-quarter lying immediately to the west of the now disputed tract, to wit, the west half of the southeast quarter, except a four-acre tract in the southeast corner thereof, approximately 76 acres. (The excepted four-acre tract was triangular in shape and was cut off from the remainder of the half-quarter by the Oak Grove School Road. The road therefore furnished the boundary of the southeast corner of the 76–acre tract). As the purchase was pending, Putnam conducted Monte Gurwit around the property to point out the boundaries. He pointed out the Oak Grove School Road as being the south and east boundary of the property, and Gurwit relied upon Putnam's representation.

The Putnams, however, did not have record title to the 17–acre tract and their deed to the Gurwits did not include it in the description. The deed described only the property in the west half of the southeast quarter.

The now disputed 17–acre tract was of the same character as the west half of the southeast quarter, which lay immediately to the west. It was rough, brushy, wooded land. There was no fence, monument or

any kind of demarcation marking the west line of the east half of the southeast quarter, which was the west line of the now-disputed tract. The land was uncultivated and was used not even for pasture. With the addition of other land, the plaintiffs Gurwit had a primitive 300-acre recreational area, on which they built and stocked with fish a large lake.

The Gurwits, assuming they had a secure title, took possession of the 17-acre tract along with the land to the west thereof, and for the space of twenty years continued to possess it and exercise dominion over it in the manner we shall describe. They posted "no trespassing" and "no hunting" signs along the road. They cut firewood on the tract, and gave friends permission to cut firewood thereon. Gurwit assisted over a period of years to clean up the downed trees and brush along the road, which had been left there when the road was widened before the Gurwits purchased the land. For a time Gurwit planted plots of food for wildlife on the tract which included the disputed tract. He was not sure that any of the plots were on the disputed tract, but he did enter the tract from the road with the machinery he used in the operation.

The Gurwits' ownership of the 17-acre tract was apparently acknowledged by all. Defendants Mr. and Mrs. Eugene Gruender, who owned and occupied the property on the east side of the Oak Grove School Road, on occasion called the Gurwits about trespassers on the 17-acre tract. Defendant John Gruender, son of the Eugene Gruenders, once protested Gurwit's cutting a tree on his property lying north of vacated Stidham Road. Gurwit acknowledged his mistake, moved south of Stidham Road, onto the tract which is now disputed, and continued with his tree-cutting with the apparent approval of John Gruender.

In 1983 Eugene Gruender told Gurwit that Gurwit did not have record title to the 17-acre tract. Gurwit went to the assessor's office and verified what Gruender had told him. The 17-acre tract had in fact been included with Gruender's tax bills, and those of his predecessors in title, who owned that part of the east half of the southeast quarter of section 4 which lay east of the road. From 1983 on, Gurwit paid the taxes on the 17-acre tract.

Afterwards the Gurwits instituted this quiet title action, which included the 17-acre tract in question. The two Gruender families were made defendants. They filed answers and a counterclaim, seeking to have the title to the 17-acre tract quieted in themselves. From the judgment adverse to themselves the Gruenders have appealed.

■ In order to establish their title to the 17-acre tract by adverse possession, it was incumbent upon the plaintiffs to prove that their possession was hostile, that is under claim of right; actual; open and notorious; exclusive; and continuous over the statutory period. *Counts v. Moody,* 571 S.W.2d 134, 138 (Mo.App.1978). *See also, Walker v. Walker,* 509 S.W.2d 102, 106 (Mo.1974); *Wilton Boat Club v. Hazell,* 502 S.W.2d 273, 276 (Mo.1973). Appellants, the Gruenders, claim that the Gurwits' possession was not hostile, was not actual, was not open and notorious, was not exclusive and was not continuous over the statutory period. We hold, however, that each element of adverse possession was proved.

■ The Gurwits possessed and exercised dominion over the property as much as the character of the property admitted. The land, as noted, was unimproved and uncultivated. It had no buildings, no cross fences, and no fences along the road. The Gurwits did as they chose with the property, in the manner we have recounted above. Their possession was hostile, not in the sense that they fortified and stood ready to defend it by force of arms—though their posting of "no trespassing" and "no hunting" signs indicates most strongly a "hostile" possession. The intent of the Gurwits to possess, occupy, control, use and exercise dominion over the property satisfies the requirement of hostility. *Counts,* 571 S.W.2d at 139; *see also, Agers v. Reynolds,* 306 S.W.2d 506, 512 (Mo.1957); *Schaumburg v. Heafey,* 650 S.W.2d 697, 698 (Mo. App.1983).

The Gurwits' possession was actual. Possession, as we have observed *supra*, depends upon the nature and location of the property. The Gurwits lived some distance from the land. It was not necessary that they occupy or use every foot of the land at every minute. Their acts of dominion over the property were sufficient to establish the required possession. *Miller v. Medley*, 281 S.W.2d 797, 801 (Mo. 1955); *Teson v. Vasquez*, 561 S.W.2d 119, 126 (Mo.App.1977).

The Gurwits' possession was open and notorious. Gurwit testified to the fact of his cutting firewood, picking up trash along the road, cleaning up the brush and trees left by the road widening project, all in the sight of passersby. No one having an adverse claim to the property could fail to have noticed that the Gurwits were claiming this property as their own. *Porter v. Posey*, 592 S.W.2d 844, 849 (Mo.App. 1979); *City of South Greenfield v. Cagle*, 591 S.W.2d 156, 160 (Mo.App.1979).

The Gurwits' possession was exclusive. " 'Exclusive possession' means that the claimant must hold the possession of the land for himself, as his own, and not for another." *Walker*, 509 S.W.2d at 106.

The Gurwits' possession was as continuous as the nature of the property would admit. There were no doubt days or weeks when they were not physically present on the disputed tract, but continuous possession clearly does not require continuous occupation and use. *Teson*, 561 S.W.2d at 127; *see also, Feinstein v. McGuire*, 297 S.W.2d 513, 517 (Mo.1957); *Spence v. Wrobleski*, 603 S.W.2d 91, 92 (Mo.App.1980).

We hold that the evidence amply supported the trial court's finding that the Gurwits' possession of the disputed tract was of a character that ripened into title with the passage of the statutory period of ten years. Section 516.010, RSMo 1986.

Appellants complain of the trial court's assessing against them costs of $995.50. This was all the court costs except one-half a guardian ad litem's fee, which was assessed to plaintiffs. Specifically, appellants claim that $634.50 of the costs was for service by publication (upon 202 named defendants, and including the entire 300 acres owned by the Gurwits), an expense which would have been incurred by plaintiffs even had the defendants not filed answer and contested plaintiffs' petition to quiet title to the 17–acre tract. This is a reasonable argument, and that portion of the costs, $634.50, should be assessed to plaintiffs. The case is remanded to trial court for that purpose. In all other respects the judgment is affirmed.

The court costs on appeal are taxed to appellants.