**Clarence I. WHITES and Theresa G. Whites, Plaintiffs–Respondents,**

v.

**Vernon WHITES and Mary Jane Whites, Defendants–Appellants.**

No. 17142.

Missouri Court of Appeals, Southern District, Division Two.

June 28, 1991.

Jay White, Rolla, Kevin Blackwell, Independence, for defendants-appellants.

Ina Ruth McKune, Thomas, Birdsong & Clayton, Rolla, for plaintiffs-respondents.

SHRUM, Judge.

In this boundary-line dispute, the defendants Vernon Whites and Mary Jane Whites appeal from a judgment which (1) quieted title to the disputed parcel of land in the plaintiffs Clarence I. Whites and his wife Theresa, (2) ejected the defendants from the disputed area, (3) enjoined the defendants from interfering with the disputed land, and (4) awarded the plaintiffs $100 actual damages and $100 punitive damages for trespass on the disputed area.

The dispositive issue is whether there was substantial evidence in the record to support (a) the exclusivity element of adverse possession and (b) the actual possession element of adverse possession.

We affirm the quiet title judgment because we have determined that there is substantial evidence to support the trial court's finding on those two elements of adverse possession. We also affirm the judgment on the additional counts for ejectment, injunctive relief, and damages because the defendants' single claim of trial court error on those counts is that the plaintiffs had no title to the disputed land to support those judgments, a claim which we have ruled adversely to the defendants.

### FACTS

This is a dispute primarily between two brothers, the plaintiff Clarence and the defendant Vernon, over the location of the boundary line between their respective tracts of land. The brothers originally obtained title to their land from their parents. The legal description in each deed was derived from a 1951 survey by deputy county surveyor J. Kent Roberts and described a common boundary line between the two tracts. The dispute arose over the actual location of the boundary line.

In July 1958, soon after Clarence obtained a deed for the northerly 15.5 acres from his mother, he and Vernon became partners in a television sales and repair business. As part of that venture, the plaintiffs conveyed to Vernon a one-half interest in 2.5 acres along the south side of their land. It was on that 2.5 acres that the parties erected a building to house their business.

In 1967 Clarence and Vernon dissolved their partnership. At the time, Vernon still owned his original 4.5 acres south of the partnership 2.5 acres. As part of the partnership dissolution, the defendants conveyed their undivided one-half interest in the 2.5 acres back to the plaintiffs on September 13, 1967. The brothers used the description taken from the 1951 survey by Roberts in the 1958 and 1967 deeds for the 2.5 acres. As a result, after the brothers parted company in September 1967, the

boundary line description in each deed was the same as had been described when the land was first divided.

However, "very soon" after the partnership was dissolved, the defendant Vernon began to complain about what the plaintiffs used as the boundary line between the two tracts. That dispute ultimately led to this litigation.

Viewed most favorably to the judgment of the trial court, there was evidence that the plaintiffs, or their tenants, mowed, maintained, and used the disputed area regularly from September 1967 until the plaintiffs sold the property on March 31, 1983. There was a "usage line" on the ground between the two properties which corresponded to the line shown on the plat prepared by R.L. Elgin, County Surveyor. Along that "usage line" were concrete posts which Clarence identified as originally enclosing a garden and a grape arbor. Immediately north of the "usage line" was a driveway which came "down the edge of the two boundaries." According to Clarence, that driveway was built to serve the building which housed the television business and led to a garage door in the back of that building.

After Clarence became the sole owner of that property in 1967, the driveway was used by "big 18 wheelers" to get to the back of the building and unload into the warehouse-basement of the building. The garbage truck had used the driveway to pick up garbage from the tenants in the plaintiffs' building. Clarence testified that while he and Theresa owned the building, the garbage trucks would circle the building until Vernon began to interfere shortly before suit was filed. And, in front of the building and north of the "usage line" there was a circle drive which was built for and used by customers of the business. Clarence also testified that "years ago" Vernon had piled "a bunch of garbage and trash" on their property near where the plaintiffs claimed the boundary line to be, and the plaintiffs had built a wooden fence along that line to hide the trash. Immediately south of the "usage line" the defendants had set a house trailer and, although

the back door of that trailer, when opened, might cross the line as contended for by the plaintiffs, no other part of the trailer was placed on what the plaintiffs claimed to have possessed and owned.

Between March 31, 1983, and July 1989, the plaintiffs sold the 2.5 acre parcel twice. They foreclosed on the first purchaser and accepted a reconveyance from the second purchaser after the defendants commenced interfering with the second purchaser's possession of the disputed tract. The record is less than clear about who used the disputed area while the first purchaser owned the property but the second purchaser reconveyed the 2.5 acres to the plaintiffs after they tired of fighting with Vernon about the boundary line.

After the plaintiffs reacquired the property in July 1989, the defendants (a) put barbed wire and posts on the disputed area, (b) parked a trailer in the driveway on the disputed area, and (c) put materials or trash on the disputed area. The trailer was moved at the plaintiffs' insistence and the wire was taken down. Finally, the plaintiffs filed this multiple count lawsuit in September 1989, approximately 60 days after they reacquired the property.

## SCOPE OF REVIEW

■ Our standard of review for court-tried quiet title actions is the same as other court-tried cases and is well established. We must affirm the judgment if it is supported by substantial evidence, is not against the weight of the evidence, and the trial court did not erroneously declare or apply the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Lohrmann v. Carter*, 657 S.W.2d 372, 377 (Mo.App. 1983). The record contains no request by either side to the trial court for findings of fact or conclusions of law. Rule 73.-01(a)(2). We must, therefore, resolve all fact issues in accordance with the trial court's judgment, and we will affirm it on any reasonable theory of law in accordance with the evidence. Rule 73.01(a)(2); *Lohrmann*, 657 S.W.2d at 377.

## ANALYSIS AND DECISION

■ To establish title to the disputed tract of land by adverse possession, the plaintiffs have to prove that their possession was (1) hostile, that is, under a claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for the statutory period of ten years. *Green v. Lange,* 797 S.W.2d 765, 767 (Mo.App.1990); *Elliott v. West,* 665 S.W.2d 683, 687 (Mo. App.1984).

In Point I, the defendants claim that the trial court erred because the plaintiffs failed to prove that their possession was "exclusive." In Point II, they claim the plaintiffs failed to prove that they had "actual possession" for ten years. Because the same facts are often proof of more than one element of adverse possession, T. Hellmuth, 18 Mo.Prac. *Real Estate Law* § 62 (1985), we consider these points together.

■ First, the element of "exclusive possession" means that the claimant must hold the possession of the land for himself, as his own, and not for another. *Walker v. Walker,* 509 S.W.2d 102, 106[2] (Mo.1974); *Gurwit v. Kannatzer,* 788 S.W.2d 293, 296 (Mo.App.1990); *Elliott,* 665 S.W.2d at 692. Second, the element of "actual possession" means that the claimant must show his present ability to control the land and the intent to exclude others from possession. *Green,* 797 S.W.2d at 768[4]; *A. Charles Bussen Trust v. Kertz,* 723 S.W.2d 922, 927 (Mo.App.1987); *Elliott,* 665 S.W.2d at 690.

■ Here, the defendants urge that the plaintiffs failed to prove the element of exclusive possession because "ever since 1967 Vernon had disputed Clarence's use of the tract and had made use of it himself by parking vehicles on it, using the southeastern end of the semi-circle drive, building fences where he claims the boundary was, and placing what Clarence claims was 'trash' and 'garbage' on the disputed tract." They also argue that the plaintiffs failed to prove actual possession because "Clarence obviously did not have a present ability to control the disputed tract. He was forced to bring an action for injunctive relief and to quiet title before he could

regain control." We reject both arguments for the reasons that follow.

■ The statutory period for establishing title by adverse possession is ten years. Section 516.010, RSMo 1986. *Newton v. Wimsatt,* 791 S.W.2d 823, 829 (Mo.App. 1990). "Once title becomes vested by adverse possession, it remains so until passed by a grant or operation of law as other titles are transferred." *Id.* at 829. It is not essential to the plaintiffs' proof of title by adverse possession that the ten consecutive years be the ten-year period immediately preceding the filing of the lawsuit. *Moore v. Hoffman,* 327 Mo. 852, 39 S.W.2d 339, 344, 75 A.L.R. 135, 145 (1931); *Bussen Trust,* 723 S.W.2d at 929; *Spence v. Wrobleski,* 603 S.W.2d 91, 92 (Mo.App.1980). Evidence that the defendants began to interfere with the disputed strip after 1983 or that the parties were tenants in common before 1967 does not compel a finding that the judgment was erroneous if there was substantial evidence that the plaintiffs had actual and exclusive possession continuously from 1967 through 1983.

The record reveals testimony from the plaintiff Clarence that he and his wife had "mowed" and "maintained" the disputed area regularly from 1967 until they sold it in 1983. He also testified that during the 1967 to 1983 period they used the driveway on the disputed strip to serve the building. During that period they built a fence along part of the "usage line" to shield from view "trash" which Vernon had piled up immediately south of the "usage line." Vernon conceded that the plaintiffs had tenants in the building on their property and that the tenants had used the disputed strip. Thus, when he was asked if he or his family had torn down the steps to the plaintiffs' apartment building in 1989, he replied:

No, sir. I think a car hit them. They—Listen, that is a race track around there. There's 10–11 people live up there and they just make a race track out of that, motorcycles and cars and everything else, garbage trucks. I had nothing to do with it and neither did none of my family.

The rental of the disputed land by the plaintiffs and the collection of rents thereon is persuasive evidence of actual possession. *Land Clearance For Redevelopment Auth. v. Zitko*, 386 S.W.2d 69, 83 (Mo. banc 1964).

All of the above varying acts of continued use of the disputed strip can serve as evidence of actual possession. *Green*, 797 S.W.2d at 768. It was not necessary that the plaintiffs prove that they occupied every foot of the land at every minute. *Gurwit*, 788 S.W.2d at 296. The acts which will characterize possession as "actual" depend on the nature and location of the property, the uses to which it can be applied and all the facts and circumstances of a particular case. *City of South Greenfield v. Cagle*, 591 S.W.2d 156, 160 (Mo.App.1979). We believe that there was sufficient evidence to support a finding that the plaintiffs exercised the normal incidence of possession for a business property and, under the circumstances here, the use of the property showed that the plaintiffs had actual possession from 1967 through 1983. *Id.* at 160.

As to the exclusive possession element, the defendants urge that the plaintiffs failed to show exclusive possession for the statutory period because from 1958 to 1967 the parties were tenants in common and that after 1967 the defendants were not excluded from the disputed tract for the requisite period of time. We disagree. As we have noted above, we believe there was substantial evidence to show that the plaintiffs' acts during the period 1967 through 1983 were for themselves and that they considered the property as part of their business property. This was not disputed in the evidence. We hold that exclusive possession was sufficiently shown during the period of 1967 through 1983. *City of South Greenfield*, 591 S.W.2d at 160.

We affirm the judgment quieting title in the property against the defendants.

In their third point, the defendants claim the trial court erred in entering judgment for the plaintiffs "on Counts III, IV, and V ... in that to recover under such counts, it is necessary for title to the disputed prop-

erty to be quieted in the Plaintiff and allowing recovery misapplied the law." Our determination that title to the disputed property was properly quieted in the plaintiffs disposes of the defendants' third point.

The judgment is affirmed.

FLANIGAN, C.J., and PARRISH, P.J., concurs.