Charles WITT, et al., Appellants,

v.

Thomas MILLER, et al., Respondents.

No. 61019.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 12, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Feb. 10, 1993.

William R. Dorsey, St. Louis, for appellants.

Patrick Boyle, Patrick R. Gunn, St. Louis, for respondents.

CARL R. GAERTNER, Presiding Judge.

Plaintiffs appeal from the judgment in an action to quiet title to property they claim under adverse possession. The trial court ruled that plaintiffs failed to prove all the elements necessary for an adverse possession claim and declared defendants fee simple owners of the property. We reverse with specific directions.

Edward and Mary Shaughnessey (the Shaughnesseys) purchased a sixteen acre tract in St. Louis County in 1954. In 1958 they subdivided approximately twelve acres of the tract into eighteen lots known as Mary Alice Estates. The Shaughnesseys built and lived in a house on lot 13 of Mary Alice Estates. They also retained ownership of the non-subdivided four acre tract. In 1967, Charles and Elaine Witt (plaintiffs) purchased lot 12, which is adjacent to both lot 13 and the four acre tract. They constructed and moved into a house on lot 12 in April of 1968. That same year plaintiffs cleared an area which ran the length of and extended forty feet east of the back or east

property line of lot 12 (the disputed property). They also planted grass in this area in 1968. The disputed property was actually part of the four acre tract retained by the Shaughnesseys but plaintiffs believed it was part of lot 12. Plaintiffs built a split rail fence in late spring of 1969 along the back or east edge of the disputed property. They later constructed an above ground pool and deck in 1978 within the fenced area but which encroached upon the record boundary line between the four acre tract and lot 12. Plaintiffs used the disputed property for almost twenty years as a dog run, a garden and as a playground for their three children.

Ed Shaughnessey learned of the pool's encroachment in 1979 or 1980 when the City of St. Ann surveyed the subdivision as part of an annexation process. He further stated that he gave plaintiffs permission to use the disputed property because he thought it was their property anyway. The record is unclear as to exactly when the permission was granted. Elaine Witt testified that the Shaughnesseys granted permission in 1985 or 1986 but not before. The Shaughnesseys sold the four acre tract to Thomas and Rosanne Miller (defendants) in February of 1988. Defendants were aware of the encroachment when they purchased the four acre tract and they immediately demanded that plaintiffs remove the pool and deck and cease using the disputed property.

The trial court found that plaintiffs' possession was not hostile, exclusive or continuous for a period of ten years.

■ Plaintiffs sole point on appeal is that the trial court erred when it granted defendants' motion to dismiss and ruled in favor of defendants on Counts I and II of their First Amended Cross–Petition.[1] Plaintiffs claim that the evidence established all the elements necessary to prevail on their adverse possession claim. The party relying on an adverse possession claim must prove by a preponderance of the evidence possession which was 1) hos-

tile, 2) actual, 3) open and notorious, 4) exclusive, and 5) continuous for a period of ten years. *Green v. Lange,* 797 S.W.2d 765, 767 (Mo.App.1990).

■ The trial court found that plaintiffs failed to prove three of the five elements necessary for an adverse possession claim. Failure to prove even one element defeats the claim. *Beiser v. Hensic,* 655 S.W.2d 660, 662 (Mo.App.1983). The judgment of the trial court is to be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law or unless it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc. 1976).

■ Exclusive possession for purposes of adverse possession means that the claimant holds the land for himself and not for another. *Whites v. Whites,* 811 S.W.2d 844, 847 (Mo.App.1991). Plaintiffs testified that they used the disputed property as their backyard and that this was the only use of the property. Plaintiffs testified that no one else used the disputed property and Charles Witt testified that he was the only person who maintained it. The defense's own witness, Ed Shaughnessey, supported the plaintiffs' testimony. His deposition, read at trial, stated that plaintiffs were the only people who used the disputed property.

The only evidence even peripherally supporting the court's finding that the possession was nonexclusive was Ed Shaughnessey's testimony that he believed he could have used property if he had wished to and that everyone in the subdivision was supposed to be able to use everyone else's property. No evidence was introduced that indicated anyone other than plaintiffs did in fact use the disputed property between 1968 and 1978. The trial court's finding that plaintiffs' possession was not exclusive for a period of ten years is not supported by substantial evidence in the record.

1. Count I sought ejectment; Count II sought permanent injunction, and Count III, which was

denied, sought trespass damages.

■ We next address the element of "hostile possession." The definition of hostile includes "antagonistic to the claims of all others ... with the intent to possess the land as his own." *Walker v. Walker,* 509 S.W.2d 102, 106 (Mo.1974). However, hostility does not imply animosity. Plaintiffs both testified it was their intent to possess the disputed property as owners when they cleared it in 1968. Plaintiffs did state on cross-examination that they did not intend to take any property not conveyed to them when they purchased lot 12. The intent to take away from the true owner is not relevant to the issue of hostile possession. It is the intent to possess not the intent to take away from the true owner that governs. *Miller v. Warner,* 433 S.W.2d 259, 263 (Mo.1968). A review of the record indicates that the trial judge erroneously declared the law regarding hostile possession by adopting defendant's argument at the close of the evidence that the intent to take from the true owner is the test for hostile possession.

■ There is no substantial evidence to support the finding that plaintiffs' possession was not hostile. Plaintiffs testified that they intended to possess the disputed property as their own because they believed it was part of lot 12. That intent manifests itself in plaintiffs' actions which include clearing the area, maintaining the area, planting grass and a garden, erecting a fence, installing playground equipment and a dog run, and building an above ground pool with a deck.

■ We next consider whether the plaintiffs' possession was actual and open and notorious. "Actual" is determined by the nature and location of the property and the uses to which it can be applied. *City of South Greenfield v. Cagle,* 591 S.W.2d 156, 160 (Mo.App.1979). The disputed property was located in a subdivision and was behind plaintiffs' home. Plaintiffs used the property as one would expect a back yard to be used. They planted grass, mowed it, kept a dog there, etc. "Open and Notorious" is satisfied by visible acts of ownership exercised over the premises. *City of South Greenfield v. Cagle,* 591 S.W.2d at

160. Plaintiffs maintained and improved the property over a period of almost twenty years. They built a fence, deck and pool all while the record owners, the Shaughnesseys, lived next door. We believe the evidence supports the trial court's conclusion that plaintiffs possession was actual and open and notorious.

■ The final element is whether plaintiffs' possession was continuous for a period of ten years. The evidence shows that plaintiffs possession began in 1968 when they cleared the disputed property and continued until at least 1979, the earliest the Shaughnesseys would have granted permission to use the disputed property. Defendants claim and the trial judge agreed that plaintiffs had permission from the Shaughnesseys to use the disputed property. Plaintiffs testified that permission was not given until 1985 or 1986. Ed Shaughnessey's testimony is not clear as to exactly when he gave permission. However, one fact is clear, that the permission was granted after the Shaughnesseys discovered the encroachment in 1979 or 1980. Therefore plaintiffs had satisfied the continuous ten-year period from 1968 to 1979. Once the statutory period for adverse possession runs the possessor is vested with legal title and the record owner is divested. *City of South Greenfield v. Cagle,* 591 S.W.2d at 161. The ten consecutive years need not be the ten-year period immediately preceding the filing of the law suit. *Whites v. Whites,* 811 S.W.2d at 847. Plaintiffs title to the disputed area vested in 1978 and therefore the permission granted even as early as 1979 does not defeat plaintiffs' adverse possession claim.

The evidence established plaintiffs' claim to title of the disputed property under adverse possession. The trial court's decision was not supported by substantial evidence and erroneously declared the law.

The judgment decreeing title to the disputed property in defendants and granting Counts I and II of defendants' First–Amended Cross Petition is reversed. The cause is remanded for entry of judgment quieting title to the disputed property in plaintiffs and enjoining defendants from

interfering with plaintiffs use of the disputed property in any manner.

CRANE and SIMON, JJ., concur.