

# In the Missouri Court of Appeals
# Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| DAVID SOMMERLATH, | ) | No. ED100163 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | 10SL-CC01738 |
| | ) | |
| KEVIN W. VOSS AND | ) | Honorable Thomas J. Prebil |
| PAMELA VOSS, | ) | |
| | ) | |
| Appellants. | ) | Filed:  September 9, 2014 |

Kevin W. Voss and Pamela Voss ("Appellants") appeal the judgment of the Circuit Court of St. Louis County, entered after a bench trial, granting David Sommerlath ("Respondent") quiet title by adverse possession.  We affirm.

## I.     BACKGROUND

Viewed in the light most favorable to the trial court's judgment, the following facts were produced at trial.  The parties are neighbors, and their respective residential properties share a boundary in Frontenac, Missouri.  At issue is a 3,159-square-foot parcel of land along the boundary line in the parties' backyards (the "disputed area").  By deed and by property records, the disputed area is located on Appellants' lot.

Respondent moved into his home in 1979.  Prior to closing on the property, Respondent asked the real estate agent to indicate where the property line was located.  The agent indicated the property line was located just south of two maple trees on the edge of the lot.  Based on the

different heights of the grass, Respondent ascertained that the neighbor to his south mowed the grass along a line in accordance with the maple tree line. In reality, both the maple trees and the grass mowing line were on the neighboring property. This parcel beyond the deeded property line and extending to the maple trees and mowing line became the disputed area (referred to as the "red line" by the parties). When Respondent moved in, his neighbor to the south was Peggy Kennedy. At some point in the 1980s, Kennedy sold the property to the Grogans. In 2002, the Grogans sold the property to Appellants.

Every year since 1979, Respondent mowed and trimmed the grass in the disputed area. He aerated the ground every other year, fertilized and overseeded in the fall, and watered regularly. Respondent also picked up twigs and sticks, trimmed trees, and periodically paid a professional tree service to remove dead branches and limbs from the maple trees and a magnolia tree in the disputed area. Over the years, Respondent also removed from the disputed area at least five other dead trees. For several summers in the late 1980s, Respondent hired the son of the neighbors to his south, Peter Grogan, to mow the grass for him. Grogan testified when he mowed Respondent's yard, he always mowed north of the red line, not along the deeded boundary line. When he mowed his own yard, he also mowed in accordance with the red line. No one but Respondent and Grogan (while employed by Respondent) ever mowed the grass in the disputed area. No one but Respondent and his hired agents maintained the trees in the disputed area.

Respondent also installed a landscaped garden with a brick border within the disputed area. Within the garden, he planted periwinkle ground cover and laid mulch. He planted a holly bush, which he trimmed and maintained. He also planted shrubs, flowers, and bushes within the garden. No one but Respondent ever maintained the garden.

In 2006, Respondent installed an electric fence along the red line and kept his dog in his backyard, including the disputed area. The electric fence remained along the red line until Respondent moved it farther onto Appellants' property with their permission to create a mutual play area for their dogs.

A large honeysuckle straddled the disputed red line. Respondent maintained its size with a hedge trimmer. Any maintenance Appellants performed on the honeysuckle fell south of the disputed area.

Appellants installed several improvements on their property, including two eight-foot wooden trellises and landscaping. These improvements all fell south of the disputed area.

In 1992 and 1993, Respondent built an addition to his home including a garage expansion and a bedroom wing. Because the proposed addition violated existing setback requirements, Respondent had to obtain a variance and permit from the City of Frontenac. To do so, Respondent had to submit a "building site plan" and receive written authorization from his neighbors. The plan indicated that the edge of the Respondent's property was the deeded, recorded property line, not the red line. The neighbors signed the site plan, indicating that they had no objections to the variance as set out by the site plan. Respondent received the requested variance and constructed the addition as planned.

As previously indicated, Appellants purchased their property from the Grogans in 2002. Appellants lived next door to Respondent without incident until 2010. In that year, Respondent hired a tree service to remove a dead branch from one of the maple trees in the disputed area. Without direction from Respondent, the tree service also removed a dead pine tree from Appellants' property, south of the red line. Appellants then had a survey performed, which indicated that the deeded property line was farther north than the red line.

Shortly thereafter, Respondent filed this suit seeking quiet title to the disputed area by adverse possession and for other equitable relief. A bench trial was held, during which Respondent submitted a survey indicating the metes and bounds of the disputed area. The trial court subsequently entered a judgment finding Respondent adversely possessed the disputed area. The judgment granted Respondent quiet title to the disputed area as defined by the survey in evidence. This appeal followed.

## II. DISCUSSION

Appellants present two points on appeal. In their first point, Appellants assert the trial court's finding that Respondent adversely possessed the disputed area was against the weight of the evidence. In their second point, Appellants argue that the trial court erroneously failed to apply judicial estoppel to Respondent's claims.

### A. Adverse Possession

In Appellants' first point on appeal, they argue that the trial court's grant of quiet title to Respondent by adverse possession was against the weight of the evidence. We disagree.

In reviewing a court-tried case, we will affirm a trial court's determination "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). When determining the sufficiency of the evidence, we accept as true the evidence and inferences therefrom that are favorable to the trial court's judgment and disregard all contrary evidence. *Watson v. Mense*, 298 S.W.3d 521, 526 (Mo. banc 2009).

"To acquire title by adverse possession or prescription, possession must be: (1) hostile, that is, under a claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for the necessary period of years prior to the commencement of [the] action." *Id.*

4

The required possessory period is ten years.  Section 516.010 RSMo 2000.[1]  The party claiming ownership by adverse possession must demonstrate his claim by the preponderance of the evidence.  *Shuffit v. Wade*, 13 S.W.3d 329, 335 (Mo. App. S.D. 2000).

A claimant must establish each element to succeed on an adverse possession claim.  *Witt v. Miller*, 845 S.W.2d 665, 667 (Mo. App. E.D. 1993).  We address each element in turn.

### 1.    Hostile possession

Hostile possession means that the possessor acts with the intent to possess the land as his own.  *Walker v. Walker*, 509 S.W.2d 102, 106 (Mo. 1974).  An individual's intent may be inferred from his or her acts of dominion over the land.  *Bowles v. McKeon*, 217 S.W.3d 400, 405 (Mo. App. S.D. 2007).  "[H]ostility does not imply animosity."  *Witt*, 845 S.W.2d at 668.  Moreover, "[t]here need not be a dispute between two adjoining landowners over the location of [a] borderline to satisfy the hostile requirement."  *Watson*, 298 S.W.3d at 526.  The element will be satisfied even where the possessor mistakenly believes he owns the disputed tract and occupies it.  *Id.*

In this case, all evidence indicated that Respondent considered the disputed area to be his property, in that he exercised dominion over it by maintaining it.  In fact, the evidence here shows that all parties involved treated the red line as if it were the actual property line.  The evidence similarly indicated that Kennedy, the Grogans, and Appellants (prior to the 2010) considered the disputed area to be Respondent's property.  There was no evidence that Respondent's use of the disputed area was merely permissive.  This belief, although erroneous, satisfies the hostility requirement.  *See Watson*, 298 S.W.3d at 526 (holding that possessors met the hostility element where they believed they owned the disputed land and all parties treated the erroneous boundary as if it were correct).

---

[1] All further statutory references to section 516.010 are to RSMo 2000.

As such, Respondent demonstrated by the preponderance of the evidence that his possession of the disputed area was hostile.

### 2. Actual possession

To establish actual possession, it is not necessary that the possessor occupy "every foot of the land at every minute." *Whites v. Whites*, 811 S.W.2d 844, 848 (Mo. App. S.D. 1991). Occupancy of part of the claimed area satisfies this requirement if the possessor intends to possess the entire tract. *Miller v. Warner*, 433 S.W.2d 259, 264 (Mo. 1968). The character, nature, and location of the property determine the type of use necessary to satisfy this prong of the test. *Witt*, 845 S.W.2d at 668.

In *Witt*, we held that the possessors' actions constituted actual possession where they planted grass on the entire disputed area, mowed it, kept a dog there, installed a pool, and built a fence around the area they intended to possess. *Id.* In short, we found that the possessors "used the property as one would expect a back yard to be used." *Id.*

As in *Witt*, Respondent likewise used the property as one would expect a back yard to be used. He mowed and trimmed the grass in the disputed area. He aerated, fertilized, overseeded, and watered. Respondent maintained and removed trees both personally and through a professional service he employed. He also installed a garden and an electric dog fence. And while Respondent did not fully enclose the disputed area with a fence like the possessor in *Witt*, he did partially encircle the disputed area with a brick border around his garden. Further, Respondent delineated the contours of the disputed area and demonstrated his possession of its entirety by mowing along a fixed line year in and year out.

Moreover, it is not necessary that the adverse possessor enclose the disputed area in order to actually possess it, provided that he cultivates the entire tract. In *Watson*, the disputed land

6

was initially enclosed by a hedgerow and fence. *Watson*, 298 S.W.3d at 527. The possessor farmed, pastured, and cultivated the disputed land continually. *Id*. The evidence showed that even after the hedgerow and the fence were removed, the parties still respected the previously established border. *Id.* The Supreme Court held that the conduct of the owners in farming, pasturing, and cultivating the land up to the observed border satisfied the actual possession requirement. *Id*. The presence or absence of the hedgerow and fence did not affect actual possession of the entire disputed area. *Id.*

The evidence here established that all of the homeowners involved planted and maintained their yards along the red line going back to at least 1979. Respondent testified that he mowed and maintained the land up to the red line. Peter Grogan testified that he mowed Respondent's yard up to the red line from the north and mowed his parent's yard up to the red line from the south. Appellants did likewise. In fact, Appellants presented no evidence that anyone other than Respondent or his agent performed any maintenance north of the disputed area boundary line prior to 2010.

Respondent demonstrated by the preponderance of the evidence that he actually possessed the disputed area.[2]

### 3. Open and notorious possession

"Open and notorious" possession is satisfied by visible acts of ownership exercised over the disputed land. *Witt*, 845 S.W.2d at 668. This requirement ensures the record owner has cause to know of the possessor's adverse claim. *Dumproff v. Driskill*, 376 S.W.3d 680, 690 (Mo.

---

[2] Appellants argue that Respondent did not actually possess the disputed area because taxes were not assessed and Respondent did not pay real property tax for it. This does not defeat actual possession. The payment or nonpayment of taxes for a disputed parcel is evidence of actual possession, but it is not dispositive. *Dumproff v. Driskill*, 376 S.W.3d 680, 689 (Mo. App. S.D. 2012).

App. S.D. 2012). In a residential setting, visible acts of ownership include installing improvements and maintaining the landscape of the disputed tract. *See Witt*, 845 S.W.2d at 668.

In *Witt*, we found that the possessors' actions were open and notorious where they built a fence, deck, and pool on the disputed tract and planted and maintained grass on it. *Id.* The record owners had notice of the improvements and maintenance because they lived next door and regularly observed them. *Id.*

Respondent's actions were likewise open and notorious. Respondent's maintenance of the disputed area, his installation of the garden elements and brick edging, and his keeping of his dog in the disputed area all apprised the deed owners, Kennedy, then the Grogans, then Appellants, of Respondent's possession of the disputed area. In each case, the deed owners had constant notice of Respondent's conduct. Therefore, Respondent demonstrated by the preponderance of the evidence that his possession of the disputed area was open and notorious.

**4.      Exclusive possession**

Exclusive possession means that the possessor must hold the land for himself as his own, not for another. *Walker*, 509 S.W.2d at 106. Possession is exclusive where a claimant uses the land as his own backyard, and no one else uses the property. *See Witt*, 845 S.W.2d at 667. Here, Respondent used the disputed area as his backyard. He used it to contain his garden and kept his dog there. No one else so used property[3] and no one else maintained it. Respondent demonstrated by the preponderance of the evidence that his possession of the disputed area was exclusive.

---

[3] There was some evidence that Respondent allowed Appellants' dog into the disputed area to play with his dog. We need not address whether this permissive use by the deed owner interferes with the exclusive possession requirement, because it did not occur until 2006, well after Respondent met the ten-year statutory requirement. *See infra*.

8

**5. Continuous possession for ten years**

As previously stated, the required possession period in Missouri is ten continuous years. Section 516.010. However, they need not be the ten years immediately prior to filing a claim. *Watson*, 298 S.W.3d at 526. Respondent easily met this requirement. He began adversely possessing the tract in 1979. Appellants did not move in until 2002, and did not contest Respondent's ownership of the disputed area until 2010, over thirty years after 1979. Respondent demonstrated by the preponderance of the evidence that his possession of the disputed area was continuous for ten years.

Because Respondent showed by a preponderance of the evidence that his possession of the disputed area was hostile, actual, open and notorious, exclusive, and continuous for ten years, the trial court's grant of quiet title was not against the weight of the evidence. *See Horning v. White*, 314 S.W.3d 381, 385 (Mo. App. W.D. 2010) ("[p]reponderance of the evidence" is defined as that degree of evidence that is of greater weight than that offered against it). Point one is denied.

**B. Judicial estoppel**

In their second and final point on appeal, Appellants present two related arguments: (1) that Respondent should have been judicially estopped from asserting adverse possession for any time he owned his property prior to 1992, because he "represented" in an administrative hearing before the City of Frontenac that the deeded property line in the building site plan was the true property line; and (2) that the trial court erred by not fully considering all of Appellants' evidence in support of its judicial estoppel defense. We disagree.

Once title to property vests in the adverse possessor, any conduct subsequent thereto is irrelevant to the adverse possession inquiry. *Humphreys v. Wooldridge*, 408 S.W.3d 261, 269-70

(Mo. App. S.D. 2013).  "Once the ten-year period has run, the possessor is vested with title and the record owner is divested."  *Flowers v. Roberts*, 979 S.W.2d 465, 470 (Mo. App. 1998).

Respondent began adversely possessing the disputed area in 1979, when he moved in and began to maintain it.  His adverse possession was complete in 1989, ten years later.  At that point, he was vested with legal title, and the property to the south (then the Grogans', later the Appellants') was divested.  Any representations that Respondent may have made during an administrative hearing in 1992, after he acquired legal title to the disputed area, are irrelevant.  Therefore, Appellants' judicial estoppel claims have no merit.  Point two is denied.

### III.    CONCLUSION

The judgment granting Respondent quiet title to the disputed area is affirmed.

_____
ROBERT M. CLAYTON III, Judge

Patricia L. Cohen, P.J., and
Roy L. Richter, J., concur.

10